STATE OF MISSOURI, Respondent, v. SAMUEL NORBERT REESE, Appellant, No. 44100—274 S. W. (2d) 304.

Court en Banc, December 13, 1954.

Rehearing Denied, January 10, 1955.

1222

*Cecil Block* and *Merle L. Silverstein* for appellant.

*John M. Dalton,* Attorney General, and *John S. Phillips,* Assistant Attorney General, for respondent.

LEEDY, J.—Samuel Norbert Reese was convicted of murder in the first degree in having shot and killed John E. Krieger at the City of St. Louis on November 15, 1951, and he appeals from the judgment of the circuit court of that city which sentenced him to the extreme penalty in accordance with the verdict.

This appeal was argued on behalf of appellant by the same court-appointed counsel who defended in the trial court. He has been joined in the preparation of the brief by another whose name appears thereon. The trial was long and involved, and during the nine court days it consumed a record of more than 1600 pages was amassed, 30 of which were taken up in reproducing the 58 separate causes or grounds specified in the motion for a new trial. The brief assigns but seven of these claimed errors, namely: Rejection of certain testimony offered by defendant's witnesses Murch and Rasmussen; in giving of instructions 3, 5 and 6; in failing to declare a mistrial because of two incidents, one involving the setting up of a movie projector and screen, and the other involving the prosecutor's argument; and, lastly, improperly permitting the introduction of prejudicial evidence showing the commission of a subsequent robbery by defendant on the night in question. Notwithstanding this contraction, the brief declares that "appellant does not wish to waive any of the points not herein briefed." This is an untenable view of the prevailing and long-standing practice in that regard. Under decisions antedating the adoption of Supreme Court Rule 28.02, which became effective January 1, 1953 (State v. Mason, 339 Mo. 874, 98 S.W. 2d 574; State v. Davit, 343 Mo. 1151, 125 S.W. 2d 47; State v. Ramsey, 355 Mo. 720, 197 S.W. 2d 949; State v. Perry, (Mo.) 233 S.W. 2d 717), and subsequently by force of the rule itself, such practice has remained the same. Rule 28.02 expressly provides that "If the appellant files a brief in the appellate court, assignments of error in the motion for a new trial not presented thereby shall be deemed waived or abandoned." While the disposition we find it

necessary to make of the case renders the matter of no consequence on this submission, we do call attention to the rule by way of cautioning others who may likewise have misapprehended its effect.

Krieger, the deceased, was shot and killed while on duty as clerk at the Windsor Hotel, 4209 Lindell Boulevard, in the City of St. Louis. The homicide occurred during the course of a holdup of the hotel. He was shot through the head. In the view we take of the case, and for the purposes of this opinion, an extended statement of the facts is unnecessary. For present purposes, the following, taken from respondent's statement, will suffice: About 7 P.M., on Nov. 15, 1951, defendant and Dillard Wren entered the lobby of the Windsor Hotel where they "found Krieger alone behind the desk and Wren told him it was a stickup. The phone rang and Krieger was ordered to answer it. At about that time, Bennett Crump, an elevator operator, came into the lobby from the basement delivering a cup of coffee to Krieger. When he stepped out of the elevator he found two men in the lobby with masks on; one was on the outside of the counter and another behind the desk holding a gun on the clerk. When the man on the outside of the counter saw Crump, he ordered him over to where he was and the man behind the counter said it was a stickup. Crump attempted to hold up his hand and when he did, Wren, who was behind the counter, 'kind of wheeled' and pointed his gun at Crump. Whereupon, Krieger attempted to strike Wren with some instrument and both Wren and the defendant turned and pointed their guns toward the clerk. Crump then heard an explosion but does not know how many shots were fired. Crump then ran down the hall and heard three or four shots and then felt a shot in his back under the shoulder blade.

"In his confession, the defendant said that when Krieger tried to strike Wren he gave an alarm but does not know whether he fired at that time at the clerk but does know that he fired three or four times at Crump who was running down the hall. He then stated that he fired his first shot at the clerk and then after firing at Crump three or four times, he fired again at Krieger who was then lying down with a bloody spot on his head. After this had happened, the two men ran out of the place, got in their car and drove down to South Broadway."

The defense was directed to an effort to show defendant was not right mentally, and that a promise of a lesser degree of punishment was made to him to secure his confession. Defendant did not testify.

 Krieger died as a result of his injury, but Crump, the colored bell boy, recovered, and testified to the bulk of the matters and things set forth in our statement of the facts. However, there was some faltering on his part in "being able to swear" to the identification of defendant. Apparently because of this, and to identify the gun with which the murder was accomplished, the state was permitted to make the showing on which defendant's last point is based; that is, over

his vehement objection, it was shown that about 9 or 9:30 on the same evening, about two hours after the occurrence at the Windsor Hotel, there was an attempted holdup of the Russell Liquor Store located at McLaren and Goodfellow, in the City of St. Louis, by two men who proved to be defendant and Wren. Witness Herzfeld (apparently a customer) stated that defendant stood right next to him for about five minutes with a German Luger pistol pressed against his (witness') face; that several shots were fired by both the robbers and the police; that when defendant was standing beside him, "he [defendant] tried to load the Luger up again and he couldn't hardly make it, he was kind of nervous, and then by that time the other fellow [Wren] from the next room he hollered out 'I surrender,' so he [defendant] hollered he surrendered, too, and he throwed the gun against the front of the store." The Luger was retrieved by officers, and defendant was asked if he had the Luger all evening, and he answered, "I had the Luger all evening." The latter statement appears not only in defendant's confession, but it was proved by an array of police officers in whose presence it was made.

The state seeks to sustain the propriety of showing defendant's commission of this separate, independent and subsequent crime solely on the theory that such evidence was admissible to prove the identity of the defendant as the perpetrator of the murder for which he was then on trial. It is argued that inasmuch as bullets found at the Windsor Hotel were identified as having come from the Luger which was in his possession at the liquor store holdup, and that a bullet from this type of gun killed Krieger, therefore defendant's possession of the Luger at the subsequent holdup linked him with the murder of Krieger.

"The well established general rule is that proof of the commission of separate and distinct crimes is not admissible, unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial. * * * Evidence of other crimes, when not properly related to the cause on trial, violates defendant's right to be tried for the offense for which he is indicted." State v. Shilkett, 356 Mo. 1081, 204 S.W. 2d 920, 922-923. Exceptions to this general rule of exclusion are as well established as the rule itself. On this point this court has twice cited approvingly (State v. Buxton, 324 Mo. 78, 22 S.W. 2d 635, 636, and State v. Spinks, 344 Mo. 105, 125 S.W. 2d 60, 64) the following from People v. Molineux, 168 N.Y. 264, 61 N.E. 286: "Generally speaking, evidence of other crimes is competent to prove the specific crime when it tends to establish, first, motive; second, intent; third, the absence of mistake or accident; fourth, a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; fifth, the identity of the person charged with the commission of the crime on trial." The test of whether

evidence of other distinct crimes falls within any of these exceptions has been aptly stated as follows: "The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime. But the dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the courts to rigid scrutiny. Whether the requisite degree of relevancy exists is a judicial question to be resolved in the light of the consideration that the inevitable tendency of such evidence is to raise a legally spurious presumption of guilt in the minds of the jurors. Hence, if the court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy, the accused should be given the benefit of the doubt, and the evidence should be rejected." State v. Lyle, 125 S.C. 406, 118 S.E. 803; State v. Gregory, 191 S.C. 212, 4 S.E. 2d 1.

As above indicated, the state here invokes the fifth exception to the general rule of exclusion, that is, to prove identity. But there are limitations upon this exception, as thus stated in 20 Am. Jur., Evidence, § 312: "Generally speaking, it is only where the identity of the accused is not definitely connected with the offense on trial that other offenses may be introduced to connect and identify him with the case on trial. If the identity of the accused is established by other evidence and is therefore no longer an issue, it is improper to admit evidence of other crimes on the theory of proving identity. * * * *It is not proper to admit details of separate and distinct crimes for the purpose of showing identity.*" (Emphasis supplied.) Because the question is not raised, we do not need to determine whether the accused's confession so established his identity as to come within the limitation just mentioned. The contrary will be assumed for present purposes. But proof of the fact of defendant's possession of the Luger when arrested later that evening did not necessitate the inclusion of the further showing with respect to the details of the subsequent crime in which it was used by defendant. What relevancy the details of the holdup could possibly have on the issue of defendant's guilt of the murder charge for which he was on trial has not been suggested, nor have we been able to discover any, so, under the authorities, supra, we are forced to the conclusion that the introduction of those details (as hereinabove enumerated in part) could have had no other effect than to seriously prejudice the accused, and constituted reversible error.

 With respect to the assignments touching the rejection of certain testimony on the part of defendant's witnesses, Miss Lucille Murch, and his aunt, Mrs. Bertha Rasmussen, it may be said that upon a careful reading of the testimony of the latter, we fail

to find the slightest suggestion that the witness was "prevented by the trial court from giving her opinion as to the mental condition of the accused,". as charged on this appeal. ·On the contrary, it affirmatively appears that the witness was permitted to state that in her 'opinion, based upon the enumeration of a long catalogue of erratic actions on defendant's part, she was positive he did not know the difference between right and wrong on the date of the alleged offense. It is true the court sustained the state's objection to defendant's question propounded to Miss Murch (a teacher-counsellor in a school which defendant attended for about 60 days in 1946) as to whether in her opinion defendant needed the services of a psychiatrist. The court based its ruling on the proposition that the witness had not been shown to have the requisite qualifications. We think the ruling unassailable not only for the reason assigned, but also because the witness had theretofore detailed her contacts with the defendant, and based. on mentality tests, as given students, stated defendant "was graded as low average." There was no rejection of her opinion as a lay witness, as to defendant's insanity.

■ Instruction No. 3 is challenged. It is a counterpart of one bearing that number which is set out at length in State v. Schnelt, 341 Mo. 241, 108 S.W. 2d 377, 383. The complaint urged by defendant's brief is that the instruction hypothesizes no facts in authorizing a verdict of guilt, and is a misstatement of the felony-murder doctrine (RSMo 1949, § 559.010, VAMS) because neither mentioning or requiring any connection between the homicide and the primary felony. No such complaint was made by the motion for a new trial. Because the case must be retried, we take occasion to say that this form of instruction is regarded as being supplementary to the state's principal instruction (requiring that the killing be done "deliberately") by telling the jury that under the law the killing was done "deliberately" if done "while the defendant was attempting to perpetrate a robbery at the Windsor Hotel in the City of St. Louis." State v. Schnelt, supra. It was unnecessary to again hypothesize the facts submitted in the principal instruction. To have done so would have served no useful purpose.

■ Defendant makes three complaints with respect to instruction No. 5 (submitting the defense of insanity), the first of which is that the concluding paragraph told the jury that in the event of a finding of the hypothesis of insanity as therein outlined, "you ought to acquit him on the ground of insanity, and, by your verdict, so say." It is charged that the use of the word "ought" instead of "must" constituted serious and prejudicial error because under the former the jury was improperly invested with discretion as to whether to convict or acquit when actually no such discretion or alternative exists if the jury find the defendant insane, and hence the language of the instruction was such as to deprive him of the defense of insanity.

"Ought" expresses bounden duty as well as moral obligation, and carries the idea of conscientious compliance. To be sure, "must" is a stronger word because signifying compulsion or necessity. See Webster's International Dictionary, pp. 1616 and 1730. But a jury capable of understanding the evidence and finding the facts would encounter no difficulty in determining its duty under an instruction stating that upon finding certain facts they "ought" to acquit or convict. The objection urged is hypercritical.

It is also claimed that the instruction imposes upon defendant a greater burden of proof to prove insanity than the law requires, this because of the interchangeable use, throughout the instruction, of the terms "believe and find from the evidence" and "find," as applied to both the proof of insanity and the proof of the crime itself. Defendant cites the following as an example: "From all this, it follows that although you may believe and *find* that the defendant committed the offense alleged, yet if, from the evidence, you further *find* that, at the time he did it, he was in such an insane condition * * *." We fail utterly to see wherein the interchangeable use of such terms "imposes upon defendant the same burden of proof in regard to insanity as rests upon the state in regard to proof of the primary offense." This very instruction contains a paragraph which expressly negates any such effect. Witness this language: "The law presumes the defendant innocent, and the burden of proving him guilty rests with the State, and before you should convict him, his guilt must be established beyond a reasonable doubt. On the other hand, to entitle the defendant to a verdict of not guilty, by reason of his insanity, the law requires him to prove it, not, however, beyond a reasonable doubt, but only by the greater weight or preponderance of the evidence."

We are unable to agree that the defense of insanity was disparaged by the use of the following language in the opening sentence of the instruction: "In this case insanity is interposed as a defense to the charge set forth in the information." It was said in State v. Eaves, 362 Mo. 670, 243 S.W. 2d 129, 130, that in the instruction there under consideration the words "as a defense" should have been used in place of "as an excuse." And it was there held that the further expression "by defendant's counsel" (in referring to and characterizing the interposition of the defense of insanity) was prejudicially erroneous as tending to disparage a legal defense of insanity when made in good faith. The offending language has been deleted here, and this, we think, with obvious awareness of, and in compliance with, the Eaves case.

 The motion for a new trial assigns error in the giving of instruction No. 6 (dealing with the subject of statements made by defendant, and how they should be considered) "because such instruction is a misstatement of the law, misleading, and a comment on the

1230

evidence, and conflicts with other instructions." This assignment fails to state in what respect the instruction misstates the law, is misleading, constitutes a comment on the evidence, or conflicts with other instructions, consequently it fails to comply with the requirements of the motion for new trial statute (RSMo 1949, § 547.030, VAMS), and hence saves nothing for appellate review in the respect just mentioned. However, the motion does assign the failure of the instruction to specifically extend to and embrace photographs posed by defendant in the alleged reenactment of the crime; in other words, it is contended the instruction should have further told the jury that defendant's posing for such photographs should be disregarded "if at the time such photographs were made, defendant was insane and incapable of understanding what he was doing." We have been cited to no authority requiring such inclusion, nor, indeed, to a case where anything other than oral statements were involved. As stated, the instruction before us had to do with, and was limited to oral statements. We hold defendant is not entitled to complain of the supposed deficiencies on which he relies in the absence of a request on his part that the additional items be covered, that subject matter being merely collateral, and not one upon which the court was required to instruct, under RSMo 1949, § 546.070, VAMS, whether thereunto requested or not.

The other matters complained of are of such nature as to render it unlikely that they will or might recur upon another trial, and so need not be ruled. For the error hereinabove mentioned, the judgment must be reversed, and the cause remanded. It is so ordered. *Hyde, Hollingsworth* and *Dalton,* JJ., and *Bennick* and *Cave,* Special Judges, concur.