STATE of Missouri, Respondent,

v.

Basil D. STONE, Appellant.

No. 40972.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 25, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied May 19, 1980.

Application to Transfer Denied
Sept. 9, 1980.

Robert C. Babione, Public Defender, Mary Kay Wefelmeyer, Asst. Public Defender, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Steven W. Garrett, Asst. Attys. Gen., Jefferson City, George Peach, Circuit Atty., St. Louis, for respondent.

REINHARD, Judge.

Defendant appeals from the judgment imposed after a jury verdict of murder in the first degree and robbery first degree. Under the Second Offender Act defendant was sentenced by the court to life imprisonment in the Department of Corrections on the murder charge and forty years imprisonment on the robbery charge, these sentences to run consecutively. On appeal defendant asserts: 1.) that the admission of evidence of another unrelated crime was error and 2.) that his conviction of first degree murder and first degree robbery constituted double jeopardy.

The state's evidence established the following: Shortly before 3:00 p. m. on February 17, 1978, two armed men, one carrying a pistol and the other carrying a shotgun, entered the Axelbaum Pawn Shop and Loan Company. The man with the pistol jumped up on the counter and told the manager, Louis Axelbaum, "don't move old man, give it up" and then shot him. The man with the shotgun ordered the other employees and customers in the store to lie

down on the floor. The glass in the counter cases was broken and a substantial amount of jewelry was taken.

Mrs. Siletha James, a customer in the store, subsequently identified the defendant at a line-up and at trial as the man who shot Axelbaum. She also identified a photograph of Charles Gunn as the man with the shotgun. Her husband, Miles James, was unable to identify the defendant's face but made a voice identification at the line-up and at trial. Miss Charlene Gunn, Charles Gunn's sister, identified defendant as the man who came to her mother's house with her brother at approximately 4:00 p. m. on the afternoon of the Axelbaum shooting. Both men had various items of jewelry with them on that afternoon. The manager of the Easton Pawn Shop identified defendant as a patron who had pawned property at his shop several times subsequent to the Axelbaum shooting. Defendant had in his possession at the time of his arrest jewelry taken from the Axelbaum Pawn Shop, including a watch he was wearing which he apparently attempted to conceal in an empty milk carton. This watch, along with the items seized from defendant when he was arrested and the jewelry pawned at the Easton Pawn Shop were identified by Miss Gertrude Taylor, an employee of Axelbaum's, as jewelry taken in the robbery.

Defendant's claim of error relating to the admission of evidence of an unrelated crime arises out of the following testimony. Officer Chrum testified that he and his partner were assigned to do a follow-up investigation of the incident at the Axelbaum Pawn Shop. In response to a question asking "what was the first thing that you did or that happened with reference to this [the Axelbaum] investigation?" Chrum stated that prior to the time he and his partner became involved in the actual Axelbaum investigation, they were investigating the fatal shooting of Charles Gunn. During the investigation of Charles Gunn's death, Chrum stated he talked with the decedent's sister, Charlene Gunn, about the death of her brother. Chrum testified that during the interview, he questioned Charlene about

things her brother had recently done. He also asked if she knew who was with her brother when he was last seen. Officer Chrum stated that during the interview with Charlene that she gave him a Polaroid picture of a male subject with two females standing on either side of him. Officer Chrum identified the male subject as being the defendant.

Miss Charlene Gunn also testified at the trial. She indicated that she saw the defendant with her brother at approximately 4:00 p. m. on the afternoon of the Axelbaum shooting at her mother's house. She stated that at that time she did not recognize the defendant but that thereafter she "thumbed through" one of the picture albums her brother had while he was in the penitentiary and discovered a photograph of defendant. She gave this picture (State's Exhibit 21) to Officer Chrum. Charlene also testified that on the evening of the Axelbaum shooting, her brother returned to her mother's home alone about 6:00 p. m. and that when she left at 8:30 p. m., he was still present.

From this testimony defendant asserts that the trial court erred in admitting evidence which raised the implication that defendant was involved in another crime. He also complains that this evidence established that he had been incarcerated previously for other crimes.

■ It is settled law "that proof of the commission of separate and distinct crimes is not admissible, unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial." *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (Mo. banc 1954). We do not believe that this testimony raised the implication that defendant was involved in another crime, specifically Gunn's murder. At best, the evidence revealed that defendant was with Gunn at approximately 4:00 p. m. on February 17, but that by 6:00 p. m. he was alone. Gunn apparently was killed sometime between 8:30 p. m. and the next morning. There was absolutely no implication that the po-

lice considered defendant a suspect in that killing. Indeed, the police were not even aware of defendant's involvement with Gunn until Charlene Gunn informed them that she saw the defendant with her brother on the day of the Axelbaum killing and gave them the picture of defendant. The evidence merely disclosed how and when the police learned of defendant's involvement with Gunn as to the Axelbaum murder.

Charlene Gunn's reference to the penitentiary did not disclose the fact that defendant had prior felony convictions. Her statement did not refer to the defendant's being in the penitentiary, rather, it disclosed that her brother had been in the penitentiary. We have examined State's Exhibit 21 and find that it simply could not have conveyed to the jury any possible connotation that defendant had prior convictions. We rule this point against defendant.

As to defendant's second point wherein he claims that his convictions of first degree murder under § 565.003 RSMo. 1978 (felony murder) and robbery (the underlying felony) violated the prohibition against double jeopardy, we are compelled to agree. We note that at the time this case was tried it was permissible to convict a defendant of both felony murder and the underlying offense. *State v. Chambers*, 524 S.W.2d 826 (Mo. banc 1975) *cert. denied*, 423 U.S. 1058, 96 S.Ct. 794, 46 L.Ed.2d 649 (1976). However, in overruling *Chambers*, the Supreme Court of Missouri indicated in *State v. Morgan*, 592 S.W.2d 796 (Mo. banc 1980) that "*Chambers* is infirm at least to the extent that it holds that a defendant may be convicted and punished for felony murder and the underlying offense . . ."

Defendant did not raise this point at the trial, but requests that we consider it under the "plain error rule." Rule 30.20. At the time of trial, defendant's counsel was operating under the law as announced in *State v. Chambers*, and therefore his failing to object should not be grounds for refusing to consider this point on appeal. We have reviewed this point under the "plain error rule" and conclude that because of *Morgan's* mandate, defendant has suffered a manifest injustice. Therefore, we must reverse Count II.

The conviction and judgment is reversed outright with respect to Count II, robbery first degree. The conviction and judgment in Count I, murder first degree is affirmed.

DOWD, P. J., and CRIST, J., concur.