STATE of Missouri, Respondent,

v.

Margaret CHRISTIAN, Appellant.

No. WD 31475.

Missouri Court of Appeals,
Western District.

Dec. 29, 1981.

David V. Bear, III, Columbia, for appellant.

John Ashcroft, Atty. Gen., Mark W. Comley, Asst. Atty. Gen., Jefferson City, for respondent.

Before TURNAGE, P. J., and PRITCHARD and KENNEDY, JJ.

TURNAGE, Presiding Judge.

Margaret Christian was convicted by a jury of 33 counts of stealing over $50, § 560.156, RSMo 1969. The jury assessed punishment at 30 days in jail and a $1,000 fine on each count. The court assessed punishment at 30 days in jail on the first 25 counts, with the sentences to be served consecutively, and a fine of $1,000 on each of those 25 counts. On counts 26 through 33, the court suspended imposition of sentence and granted probation on condition of restitution. On this appeal Christian raises points relating to a variance between the charge and proof, the instructions and the admission of certain evidence. Affirmed.

Although Christian does not challenge the sufficiency of the evidence, a statement of the proof will simplify the issues. Christian had served as the city clerk of Jefferson City for about 15 years until she was discharged in January, 1979. Together with two deputies, Christian was responsible for maintaining records on all city expenditures, including the payroll for all employees. The two deputies assisted with all the records except those concerning the sewer operations and maintenance account, which was handled only by Christian.

At some time prior to April, 1975, the city had hired a fiscal officer who stayed only a few months. On his departure, the duties formerly performed by him were taken over by Christian and her two deputies. For the first four or five months after Christian assumed those duties she was paid an additional $100 per month and each of the deputies $50 per month for the extra duty. Thereafter the council voted to discontinue the extra salary to Christian and her deputies.

In April, 1975, Robert Hyder succeeded Mayor Christy as the mayor of Jefferson City. On assuming office Hyder testified that he was given a list of employees and their salaries. According to that list, Christian was paid from the regular payroll account about $930 per month. This later increased so that at the time of her discharge she was making approximately $13,000 per year. Hyder testified that he was not aware that Christian was drawing any additional amount of money from the city.

On or about February 12, 1976, Christian drew a check (warrant) number 3880 on the sewer operation and maintenance account in the amount of $950, payable to herself. The procedure for signing checks called for either the city clerk or the mayor to actually sign, and the signature of the other person was affixed by a stamp. Check number 3880 was signed by Christian and the signature of Hyder was affixed by his stamp. This check was presented for payment at the Central Trust Company in Jefferson City and the amount of $950 was transferred to the personal account of Christian. The amount of the check was charged to the sewer operation and maintenance account of the city. Normally copies of all checks were maintained in the clerk's office showing all the information which appeared on the check when it was actually written. The copy of number 3880 had been removed so it was not with the other copies. Also, a journal was kept in the clerk's office which listed each check by number, the payee and the amount. For number 3880, the journal only bore the notation "void" without any indication as to the payee or the amount. The columns in the journal listing the amount of each check were totaled at the end of each page. The total of the column in which number 3880 appeared was increased by $950 over the actual total of the amounts of checks listed. When checks had cleared the bank they were returned to the city once a month. When the monthly checks, which number 3880 would have accompanied, were returned to the clerk's office, that check was removed and either concealed or destroyed.

The evidence showed that the same procedure in all respects as was shown to have been followed with check number 3880 was repeated 32 times with the last check written on or about December 20, 1978. Shortly after that time an audit of the city books revealed that Christian had written 33 checks to herself with each in the amount of $950, between February, 1976 and December 1978. On this discovery Christian was discharged as city clerk.

Christian testified in her own behalf and admitted that she had written each of the 33 checks in the amount of $950 to herself and that she had received the cash on each check. She explained that the practice had started when the extra pay for performing the duties of the fiscal officer were discontinued and she told Mayor Christy that she would no longer perform those duties without extra compensation. She said Mayor Christy told her he would take it up with the council and he later told her that he had talked with the council and they agreed that she could receive the amount of $950 per month. However, Mayor Christy did not want the director of public works to know that she was receiving the extra compensation, so he suggested that she keep the books in such fashion that it would not show any extra payment to her. Apparently there were about 41 checks in the amount of $950 which had been written to Christian prior to April, 1975, which were signed by Mayor Christy. At the time of trial, Mayor Christy was deceased.

■ Christian first contends the evidence shows only that she stole checks and did not steal money or currency as alleged in the information. The information alleged that Christian did willfully, unlawfully and feloniously steal United States currency of the reasonable value of $950, the property of the City of Jefferson City without the permission of the owner. It is obvious the evidence not only showed that Christian took $950 on 33 occasions, but she admitted taking that amount. The evidence also showed that she took the checks which were written in order to obtain the money. Thus, instead of showing a variance be-

tween the information and proof, the evidence showed that Christian admitted receiving the money and, in addition, took the checks, i.e., the printed forms on which the checks were written. There was no variance between the information and the evidence.

■ Christian next contends the instructions on each of the 33 counts prejudicially omitted the term "United States currency" following the term "$950." There is no merit in this contention since the jury certainly understood that the $950 was United States currency.

Christian finally contends that the court erred in overruling her objection when the prosecutor inquired if she had reported the money alleged to have been stolen in this case on her tax returns filed with the state. She denied that she had reported those amounts as income. Christian contends this is evidence of another crime.

The rule as to evidence of other crimes has been stated many times, but the leading case is *State v. Reese*, 274 S.W.2d 304, 307 (Mo.banc 1954). There the court held that evidence of other crimes is competent to prove the crime charged when it tends to establish motive or intent among other things. The court quoted the following from a New York case with approval:

" 'The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime.' "

■ In this case the only question was whether or not Christian had taken the money with the consent of the city. Her position was that she had taken the money with the consent of Mayor Christy and she thought he had told Mayor Hyder so that she believed she was taking the money all along with consent. The position of the State was that the city had not given consent for Christian to take the extra compensation and it was, therefore, stealing to do

so. Certainly the fact that Christian did not report the 33 checks in the amount of $950 each as income for state tax purposes was relevant because the jury could legitimately draw the inference from this evidence that she did intend to steal the money and this was an additional effort at concealment. The court was correct in overruling the objection to that evidence.

The judgment is affirmed.

All concur.