**STATE of Missouri,
Plaintiff–Respondent,**

v.

**Kenneth K. BURGESS,
Defendant–Appellant.**

No. 15911.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 30, 1989.

Ben K. Upp, Springfield, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Judge.

By two-count information filed in the Circuit Court of Greene County, defendant Kenneth K. Burgess was charged with forcible rape in violation of § 566.030.1, RSMo.1986,[1] and forcible sodomy in violation of § 566.060.1. A jury found the defendant guilty on both counts. His punishment was assessed at 8 years for the commission of forcible rape and 15 years for the commission of forcible sodomy. It was ordered that the sentences be served consecutively. The defendant appeals, contending that the trial court erroneously received evidence of another crime with which he had not been charged.

On April 12, 1987, defendant's victim, to whom we shall refer as G., worked as a cocktail waitress at a bowling alley in the south part of Springfield, Missouri. About 6 p.m. G. finished work, went home, and about 8 p.m. she returned to her place of employment to "practice [bowling] and have a drink." G. practiced for a while, conversed with other employees and had "[a]bout three" mixed drinks. While she was in the bar, G. overheard the defendant conversing with the bartender about cashing a check. The bartender refused to cash a check for the defendant because it was the bowling alley's policy to refuse out-of-town checks. G. suggested there were a couple of stores which might cash a check; she volunteered to ride with the defendant to a store which would. G.'s brother had come to the bowling alley to take her home, but she told her brother that she and the defendant were going to visit for a while and the defendant would give her a ride home. G. and the defendant left the bowling alley about 10 p.m.

The two left the bowling alley in an automobile the defendant was driving. The defendant did not drive to the store which G. had suggested might cash a check; instead, he indicated he would go to his sister's house and obtain cash from her. The defendant drove to the south part of Springfield and turned onto a country road in a sparsely populated area. He drove past a trailer which he said belonged to his sister, but further stated that his sister had company, and he did not wish to disturb her.

The defendant continued driving away from Springfield, and eventually stopped, expressing the need to relieve himself. G. suggested that the defendant go to a service station so she might also relieve herself. The defendant answered, " 'Oh, you can go outside.' " The defendant parked his car and turned off the lights. G. re-

---

**1.** References to statutes and rules are to RSMo 1986 and V.A.M.R.

mained in the car. She lit a cigarette because she was frightened, and "[i]f he bothered [her], [she] was going to burn [the defendant] with it." When the defendant returned to the automobile, he asked G. if she had thought about having sex with him. G. answered that she had not and the defendant suggested she get out of the car. When she attempted to leave the vehicle, however, defendant "grabbed [her] coat" and pulled her back in the car. G. tried to "stick [the cigarette] in [the defendant's] face...." The defendant said, " 'Go ahead, baby. I've been burned before.' " At this point, G. became frightened; she decided not to argue or fight with the defendant because she was afraid he would hurt her.

The defendant told G. to get in the back seat of the automobile. She obeyed. Defendant then engaged in sexual intercourse with G. Defendant then sodomized G. by inserting his penis into G.'s anus. Thereafter, the defendant forced his victim to engage in sexual intercourse, but "made [her] get on top." He then told G. "[j]ust get your stuff and go." G. got out of the automobile and into a ditch so she could see the defendant's license plate. The defendant drove away.

The State had the testimony of Jeffrey S. Wheeler, a physician who examined G. after she had been raped. Dr. Wheeler testified that G. was apprehensive but when he examined her pelvis, "everything appeared normal except for some blood that was coming from the anus." The doctor believed that the anal bleeding was the result of "[s]ome sort of forceful entry." No semen or motile sperm were found in G.'s vagina, but the absence of motile sperm did not indicate G. had not had intercourse. The doctor was permitted to testify that nothing in his examination was inconsistent with sexual assault.

Over the defendant's objection, which we shall discuss in more detail, the State introduced the testimony of Teresa Hahnfield Blinzler concerning an incident which occurred in June of 1981. Mrs. Blinzler testified that in June 1981, she met the defendant at Sadie's Bar in Pierce City, Missouri.

She had gone to the bar to meet her friend, Tammy. The defendant was sitting at the bar. After Mrs. Blinzler and her friend had been in the bar for some time, the defendant offered to pay $15 to be taken to Stotts City. Mrs. Blinzler had never seen the defendant before. She and her friend did agree to drive the defendant to Stotts City. The defendant told Mrs. Blinzler that he wanted to be taken to a residence which he indicated was his sister's house. When the three persons, Tammy, Mrs. Blinzler and the defendant, arrived at the residence, Mrs. Blinzler went in the house to get the money defendant had promised to pay. Once in the house, the defendant locked the doors and "just went kind of crazy." Defendant tore Mrs. Blinzler's clothes off and had sexual intercourse with her. Mrs. Blinzler filed a complaint with the prosecutor and the defendant was arrested but Mrs. Blinzler "dropped the charges" because she didn't want to go "all through the court."

The defendant testified in his own behalf. He clearly remembered April 12, 1987—the day the crimes charged were committed—because his wife had given birth to a child and had had a particularly difficult delivery. He admitted that he met G. at the bowling alley where she worked. G. appeared to the defendant to be intoxicated. G. wanted to go "riding around." The defendant admitted he was drinking, but testified that at G.'s request, he drove to the north part of the City of Springfield, where the two had sexual intercourse. The defendant testified it was G.'s idea to engage in coition. He denied engaging in any sodomitic act with G.

The defendant also admitted that he met Mrs. Blinzler in June 1981 at the Pierce City tavern. He denied that he offered Mrs. Blinzler and her companion money to take him home; the defendant's testimony was that Mrs. Blinzler had voluntarily consented to sexual intercourse at the house in Stotts City. This episode, as we have noted, occurred in June 1981, almost 6 years before the crimes charged were committed. Other pertinent facts will be noted in the course of the opinion.

As noted, the sole point briefed and argued on appeal is that the trial court erroneously admitted evidence that the defendant committed a crime, specifically another rape, with which he was not charged. The State maintains that the point is not properly preserved for review. Slightly paraphrased, the State's contention is that the defendant made one objection in his motion in limine, another objection before Mrs. Blinzler began to testify and yet another objection in his motion for new trial. The State's point is arguable if one looks only to the written motions filed. The record shows, however, that the State's point of view and that of the defendant concerning the admissibility of Mrs. Blinzler's testimony was put before the court during argument on the motion in limine. The trial court stated in the record that it believed evidence of other crimes would be admissible to show motive, intent or the absence of mistake. This is the ground of admission for which the State had argued. Defendant's counsel, in support of his motion in limine to exclude evidence of other rapes, argued that: 1) such evidence was inadmissible because it constituted proof of other crimes; 2) the evidence was inadmissible because it was remote in time, and 3) the evidence of prior rapes—the State originally indicated it would introduce evidence of two other rapes—indicated commission of a crime so dissimilar to the crime charged as to be inadmissible for any purpose.

At the time Mrs. Blinzler was called, the prosecutor indicated she only intended to introduce evidence of one other rape, and counsel for defendant announced he would object "based upon the grounds I argued in the motion in limine." The court indicated there was no need to repeat the argument made at the hearing on the motion in limine.

The motion for new trial was argued before the trial court. Both the State and the defendant reiterated the positions they had taken during the trial concerning the admissibility of evidence of other rapes.

We agree that ordinarily, specific objections are required to evidence, arguments or statements of counsel and the objection must call the attention of the court to the ground or reason for the objection. *State v. Lang*, 515 S.W.2d 507, 511 (Mo.1974). Further, the point on appeal must be based upon the theory of the objection as made at the trial. *State v. Lang*, 515 S.W.2d at 511; *State v. Jones*, 515 S.W.2d 504, 506[3, 4], 89 A.L.R.3d 258 (Mo.1974). However, a most important reason for appellate insistence on specific objections is that the trial court must be given an opportunity to rule upon an objection giving stated reasons for exclusion. *State v. Lang*, 515 S.W.2d at 511. In this case, both parties argued their legal positions and cited specific cases to the trial court. There was no change of theory on the part of the State or the defendant. In our opinion the trial court had a fair opportunity to consider the objections now raised in this court.

The general law applicable to this case is fully stated in *State v. Mallett*, 732 S.W.2d 527, 534[4, 5] (Mo. banc 1987), cert. denied, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267, thus:

"Evidence of commission by defendant of crimes separate and distinct from the crime for which he is charged is generally inadmissible.... But such evidence is generally admissible to prove the crime charged when it tends to establish motive, intent, the absence of mistake or accident, a common scheme or plan embracing the commission of two or more crimes so related that proof of one tends to establish the other, or the identity of the person charged with the commission of the crime on trial.... Evidence of other crimes should be admitted under one of these exceptions only when the prejudicial effect of the evidence is outweighed by its probative value. This balancing of prejudicial effect and probative value lies within the sound discretion of the trial court...." (Citations omitted.)

The admissibility of evidence of the commission of other sexual offenses was extensively discussed by this court in *State v. Taylor*, 735 S.W.2d 412 (Mo.App.1987). In that case, the court was concerned with the repeated commission of aberrant sexual acts. The general law was discussed in detail, but this court specifically upheld the admission of evidence of other aberrant

offenses to prove the commission of the crime charged. It was noted, however, that most frequently the courts of this state have determined the admissibility of evidence of other crimes by determining whether or not evidence of other offenses falls within the exceptions stated in *State v. Mallett*, 732 S.W.2d at 534, *State v. Reese*, 364 Mo. 1221, 1226, 274 S.W.2d 304, 307 (banc 1954), and like precedents. There is no doubt that the rule prohibiting the use of evidence of other crimes to prove the specific crime charged has been relaxed in the last few years, particularly in the prosecution of aberrant sex offenses, *State v. Taylor*, 735 S.W.2d at 415–18, but it is still true that evidence of other crimes, when not properly related to the cause on trial, violates defendant's right to be tried for the offense for which he is indicted. *State v. Reese*, 364 Mo. at 1226, 274 S.W.2d at 307.

The State assured the trial court that it wished to use Mrs. Blinzler's testimony to demonstrate the defendant's intent, but in a forcible rape case, intent is not an element of the State's case. If the evidence shows carnal knowledge, force and the commission of the act, no intent is requisite other than that evidenced by the doing of the acts constituting the offense. *State v. Harris*, 620 S.W.2d 349, 355 (Mo. banc 1981); *State v. Tompkins*, 277 S.W.2d 587, 591 (Mo.1955). None of the exceptions enumerated in *State v. Mallett*, 732 S.W.2d at 534, *State v. Reese*, 364 Mo. at 1226, 274 S.W.2d at 307, or in other controlling precedents appear in this record. The defendant's motive and intent were not in issue; there was no question of mistake or accident, nor was the assault on Mrs. Blinzler evidence of a common scheme or plan embracing the commission of two or more crimes so related that proof of one tended to establish the other. The defendant's identity was not in issue.

The State has argued several makeweight reasons for admitting Mrs. Blinzler's testimony, but we find them unconvincing. The only real questions in the case were: a) whether the act of sexual intercourse with G. was voluntary, and b) whether the defendant had actually committed an act of anal sodomy upon her person. Generally, evidence of other rapes is permissible to show the complainant's lack of consent or the accuser's use of force only if such evidence also falls within one of the other exceptions to the general rule of inadmissibility. *Annot., Admissibility, in Rape Case, of Evidence that Accused Raped or Attempted to Rape Person Other than Prosecutrix*, 2 A.L.R.4th 330, § 6, pp. 374–80 (1980). In this case, the State has attempted to fit Mrs. Blinzler's testimony into that exception which permits proof of other like crimes so nearly identical in method as to earmark them as the handiwork of the accused. See McCormick, Evidence § 190, pp. 559–69 (Cleary Ed.1984). However for evidence of other crimes to be admissible under this exception, more is demanded than the mere repeated commission of crimes of the same class. The pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature. *State v. Young*, 661 S.W.2d 637, 639–40 (Mo.App. 1983); McCormick, Evidence at p. 560. In the instant case, as the defendant argues, Mrs. Blinzler's testimony only established the "mere repeated commission of crimes of the same class;" her testimony did not provide evidence that the uncharged offense was so similar as to brand it as the defendant's act. G.'s testimony was that she met the defendant in the "lounge" or bar adjacent to a bowling alley; she advised him that she would show him a place to cash a check; defendant drove her to a remote area where he parked his car on the road; she was ordered to remove her clothing, and she complied. Thereafter the defendant committed rape and a forcible act of sodomy upon G.'s person and left her in the ditch near the road.

Mrs. Blinzler also met the defendant in a bar, but the defendant requested that she and her friend drive him home, offering them $15 to do so. The defendant and Mrs. Blinzler went into a house and defendant thereafter became violent, ripping her blouse and tearing her clothing off. The defendant committed rape upon Mrs. Blinzler's person, but attempted no act of sodomy.

To be sure, in some respects the crimes were similar. Both episodes originated in a

bar, but such a circumstance is not uncommon in cases of rape. It is nonetheless apparent, however, that the two crimes lack that order of similarity which would brand the two acts as acts of a particular defendant and no other. G. related no violent outbursts nor ripping of clothing; Mrs. Blinzler did. One attack took place in the back seat of a car parked in a remote area and the other took place in a house. One attack involved sexual intercourse and anal sodomy; the other involved only sexual intercourse. The only real purpose served by Mrs. Blinzler's testimony was that purpose prohibited by the rule, specifically, to prove defendant's guilt of the crime charged by proving his commission of other crimes. The trial court erred in admitting Mrs. Blinzler's testimony, to the prejudice of the defendant. For that reason, the judgment is reversed and the cause is remanded.

FLANIGAN, P.J., and PREWITT, J., concur