**STATE of Missouri, Plaintiff/Respondent,**

v.

**Darren PERRYMAN, Defendant/Appellant.**

**Darren PERRYMAN, Movant/Appellant,**

v.

**STATE of Missouri, Respondent/Respondent.**

**Nos. 59826, 61877.**

Missouri Court of Appeals, Eastern District, Division One.

April 20, 1993.

Judith Larose, Office of the State Public Defender, Columbia, for defendant/appellant.

William L. Webster, Atty. Gen., Joan F. Edwards, Asst. Atty. Gen., Jefferson City, for plaintiff/respondent.

REINHARD, Judge.

Defendant appeals his conviction by a jury of first degree burglary § 569.160,

RSMo 1986, and second degree robbery, § 569.030, RSMo 1986. He was sentenced by the court as a prior and persistent offender to terms of twenty-three years' imprisonment on the burglary charge and eight years on the robbery charge, to be served concurrently. After sentencing, defendant filed a Rule 29.15 motion which the motion court denied following an evidentiary hearing. These appeals have been consolidated for review pursuant to Rule 29.-15(*l*). We affirm the judgments.

The evidence reveals that victim left his locked and unlit home at 4:30 p.m. on June 12, 1990. When he returned home around 8:45 p.m., victim, who lived alone, noticed an unfamiliar car parked in front of his house. The car's dome light was on and there was a man inside. Victim pulled into his driveway and saw his house "lit up like a Christmas tree." The car in front of the house pulled away; victim pulled up to the garage and walked to the front door. The door was open and the wooden door frame had been split from top to bottom. Victim entered his home and immediately noticed that his television and stereo were missing. The house was in disarray; things were scattered all over and the floor was covered with glass.

Victim removed his .45 caliber handgun from a nearby drawer and placed a loaded clip into the gun. He entered the bedroom and discovered defendant standing in the corner. Victim pointed the gun at defendant and directed him to get down onto his knees; defendant replied, "No," and moved slowly toward victim. Victim repeated his instruction and defendant again responded, "No." Victim retreated a few paces but defendant continued to approach, advancing right up to victim's face. Victim pulled the trigger, wounding defendant, although victim did not realize that the bullet had struck defendant. Defendant grabbed the gun and the two men struggled. Victim fell back onto a couch. When victim realized that he was about to lose control of the gun, he flipped a safety on the gun to prevent it from discharging. Defendant seized the gun, pointed it at victim, and stated, "You've had it." Defendant repeated, "You've had it", and strained to pull the trigger, but the gun did not fire. Defendant dropped his hands to his side and leaned against the wall, then ran out the door. Victim called the police.

The police arrived and victim inventoried his possessions. Items missing included a television, stereo, microwave oven, watch, and ring. Blood spots were discovered on the wall where defendant had been leaning, and on the kitchen and hallway floors. These spots were analyzed and found to match defendant's blood type. Fingerprints lifted at the scene were later positively identified as defendant's.

Prior to the crime, defendant and another man, James Fitzgerald, had been seen at a local tavern. Witnesses stated that the two men left the bar, were absent for about forty-five minutes, and then returned to the bar. Defendant's girlfriend, Frances Leslie, remained at the tavern and was there when the men returned. Upon his return, defendant asked Ms. Leslie to give him a ride to a friend's house. He held a jacket against his side and told her that he had been shot. Ms. Leslie and another woman, Dawn Pappert, accompanied him to Ms. Leslie's car; he put a handgun in Ms. Leslie's side and directed, "Take me where I want to go." She refused and returned to the bar, where Ms. Pappert joined her and convinced her to give defendant a ride to the hospital. The two women returned to the car; Ms. Leslie drove while defendant sat in the front seat. Defendant put the gun by Ms. Leslie's side and stated, "Drive the car or I'll shoot you, too." Ms. Leslie stopped the car and told defendant to get out. Ms. Pappert and defendant struggled over the gun; Ms. Pappert removed the clip from the gun and threw it out the window. The three then drove to the hospital, but defendant refused to get out of the car, stating that a bullet remained in the chamber and he would shoot Ms. Leslie if she didn't comply with his requests.

Ms. Leslie drove defendant to the home of his friends, Barbara and Mike Lococo. Fitzgerald was already at the Lococo residence when they arrived. He entered the house first and asked if the Lococos or

their three guests would like to buy a microwave oven for ten dollars. Defendant then entered the home; when Mike Lococo attempted to telephone for medical assistance, defendant put his foot on the receiver and prevented the call. Defendant and Fitzgerald left together and were subsequently arrested.

On direct appeal, defendant contends that the trial court plainly erred when it admitted Ms. Leslie's testimony regarding the threats made by him following the crime, and when it allowed testimony from a St. Louis County Justice Services officer that he had taken defendant's fingerprints in 1982. Defendant asserts that "[t]he state could have no other purpose in questioning [Ms.] Leslie regarding [defendant]'s threats than to show [him] as a bad or violent person," and that "the jury could only assume" that defendant had been arrested at the time he was fingerprinted. He argues that such testimony was irrelevant and inadmissible evidence of uncharged misconduct and requests that we award him a new trial under plain error review.

Our supreme court has greatly circumscribed the admission of uncharged misconduct evidence. In *State v. Bernard*, 849 S.W.2d 10 (Mo.1993), the court recently outlined the principles which govern our analysis:

> The general rule concerning the admission of evidence of uncharged crimes, wrongs, or acts is that evidence of prior uncharged misconduct is inadmissible for the purpose of showing the propensity of the defendant to commit such crimes. *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (Mo. banc 1954). There are exceptions to the rule. Evidence of prior misconduct of the defendant, although not admissible to show propensity, is admissible if the evidence is logically relevant, in that it has some legitimate tendency to establish directly the accused's guilt of the charges for which he is on

trial, *State v. Sladek*, 835 S.W.2d 308, 311 (Mo. banc 1992) (quoting *State v. Reese*, 364 Mo. 1221, 274 S.W.2d at 307), and if the evidence is legally relevant, in that its probative value outweighs its prejudicial effect. *State v. Mallett*, 732 S.W.2d 527, 534 (Mo. banc), *cert. denied*, 484 U.S. 933, 108 S.Ct. 309, 98 L.Ed.2d 267 (1987). The balancing of the effect and value of evidence rests within the sound discretion of the trial court. *See State v. Shaw*, 636 S.W.2d 667, 672 (Mo. banc), *cert. denied*, 459 U.S. 928, 103 S.Ct. 239, 74 L.Ed.2d 188 (1982).

> Generally, evidence of other, uncharged misconduct has a legitimate tendency to prove the specific crime charged when it " 'tends to establish: (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; [or] (5) the identity of the person charged with the commission of the crime on trial.' " *State v. Sladek*, 835 S.W.2d at 311 (quoting *People v. Molineux*, 168 N.Y. 264, 61 [N.E.] 286, 294 (1901)). The five enumerated exceptions have sometimes been difficult to define and apply. *State v. Sladek*, 835 S.W.2d at 314 (Thomas, J.[,] concurring). Evidence of prior misconduct that does not fall within one of the five enumerated exceptions may nevertheless be admissible if the evidence is logically and legally relevant. *Id.* at 311–12.

*Bernard*, 849 S.W.2d at 12–13 (Mo.1993).[1]

We note that defendant did not object to the admission of the allegedly improper testimony at trial, nor did he properly raise the allegations of error in his motion for new trial. He requests review under Rule 30.20, to determine whether plain error occurred.

In a plain error case, the alleged error is defectively preserved or not preserved

---

1. We note that the court's reference to "prior" misconduct includes uncharged misconduct occurring subsequent to the crime in question. "Although the uncharged [misconduct] usually occurs prior to the crime being tried, this is not a requirement and the same type issues can arise concerning the admissibility of ... subsequent [misconduct]." *Sladek*, 835 S.W.2d at 313 n. 1 (Thomas, J., concurring).

at all. However, the court still may consider errors affecting substantial rights when it deems that manifest injustice or miscarriage of justice has resulted. Before applying the plain error rule, the court must find a "sound, substantial manifestation" and a "strong, clear showing" that injustice will result, and the appellant has the burden of proving that the error amounted to manifest injustice or miscarriage of justice. *State v. McKinley,* 689 S.W.2d 628, 632 n. 3 (Mo.App.1984) (citation omitted). The strength of the State's case is a prime factor in making this determination. *State v. Hawkins,* 714 S.W.2d 673, 676 (Mo.App. 1986).

Defendant admits that "[t]he state could have shown that [defendant] possessed a gun after the burglary in order to try to prove the crime of robbery," but contends that "there was no need to elicit testimony that [defendant] threatened anyone with a gun." Defendant reasons that his threats to Ms. Leslie were not legally relevant, because the only ground for their admission was to establish his propensity to commit bad acts. We disagree.

■ Defendant's actions following the crime, including his threats to Ms. Leslie that he would shoot her if she did not transport him to his desired destination and his refusal to seek medical treatment or allow others to procure medical treatment for him, were relevant and admissible as indicative of consciousness of guilt because the purpose of these actions was to avoid arrest. *See State v. Scott,* 687 S.W.2d 592, 593 (Mo.App.1985). The events here are similar to those confronted by the court in *State v. Rodden,* 728 S.W.2d 212 (Mo. banc 1987), where the defendant, although bleeding severely following an alleged assault, fled the scene and did not seek medical attention. The *Rodden* court found that the circumstances of defendant's flight were admissible "to show a consciousness of guilt contrary to any theory of innocence." *Rodden,* 728 S.W.2d at 219. In

the case at bar, we find that defendant's actions subsequent to his commission of the crime, including threatening statements made to Ms. Leslie, were logically and legally relevant and therefore admissible. "Remoteness from the scene and time [of the crime] goes to the weight of the evidence[,] not its admissibility." *Scott,* 687 S.W.2d at 593.

■ We also find that admission of the officer's testimony regarding defendant's 1982 fingerprinting was proper. An examination of the challenged testimony reveals that the officer gave no indication that defendant was fingerprinted pursuant to an arrest or conviction of a crime. The officer's testimony was neutral, and did not constitute evidence of prior crimes or offenses. *See State v. Blair,* 631 S.W.2d 91, 94 (Mo.App.1982); *State v. Nash,* 621 S.W.2d 319, 323 (Mo.App.1981). Furthermore, defendant later took the stand, testified that he had been convicted of receiving stolen property and had three prior burglary convictions, admitted guilt on the pending burglary charge, and acknowledged during cross-examination that he was "a thief and burglar".[2] Under these facts we fail to find that defendant could have been prejudiced had admission of the officer's testimony been improper. *See State v. McMillan,* 593 S.W.2d 629, 633 (Mo.App. 1980).

On the basis of the record before us, we hold that admission of the challenged testimony of Ms. Leslie and the officer did not constitute error, plain or otherwise. Defendant's point is without merit.

In his sole point raised in his postconviction claim, defendant asserts that he was denied effective assistance of counsel because his trial attorney failed to object to the admission of the aforementioned testimony by Ms. Leslie and the fingerprinting officer. For the reasons set forth above in our resolution of defendant's direct appeal,

**2.** Apparently, defense counsel had admitted to the jury in his opening argument that his client

was "a thief and burglar".

we find that defendant was not denied effective assistance of counsel.

Judgment affirmed.

AHRENS, P.J., and CRIST, J., concur.