**STATE of Missouri, Respondent,**

v.

**Perry MANTIA, Appellant.**

**No. 53129.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 23, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1988.

Application to Transfer Denied
May 17, 1988.

Mary C. McWilliams, Asst. Public Defender, St. Louis, for appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Zeigler, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Judge.

In this jury tried case, Perry Mantia appeals from his conviction of kidnapping, in violation of § 565.110, RSMo.1986; of rape, in violation of § 566.030, RSMo.1986; of sodomy, in violation of § 566.060, RSMo. 1986; of robbery in the first degree, in violation of § 569.020, RSMo.1986; and of armed criminal action, in violation of § 571.015, RSMo.1986. Defendant was sentenced, as a prior and persistent offender, to consecutive prison terms of thirty years each on the rape, sodomy, and kidnapping convictions, and to concurrent sentences of thirty years each on the robbery and armed criminal action convictions.

The appeal sets forth one point relied on, which we have rephrased to raise the following two issues: First, that the trial court erred in admitting into evidence a gun not connected with the offense on trial, because it was irrelevant and constituted proof of other crimes. Such admission was error, however it was harmless due to the overwhelming evidence of defendant's guilt. *State v. Vernor*, 522 S.W.2d 312, 316 (Mo.App.E.D.1975). Second, that the trial court erred in admitting testimony of an Ohio victim and an Ohio police officer concerning events involving the defendant which occurred at a motel in Ohio. We find no error because the trial court sufficiently restricted the testimony to relevant facts, and details of the Ohio crimes were not revealed. We affirm.

The evidence indicates that at approximately 1:30 a.m. on October 18, 1985, the victim left some friends who were partying at Laclede's Landing and walked to her car. She got into her car and locked the doors. The defendant knocked on her car window and told her she had a flat tire; she ignored him, and proceeded to start the car. However, the defendant persisted in saying she had a flat tire, so she turned off the car and got out to check the tire. She found that the tire was inflated. Meanwhile, the defendant was leaning against the car next to the victim's car and appeared to be getting into it. As she got back into her car, the defendant reappeared and pulled a gun on her. He ordered her to move over, got into the driver's seat, and they rode around until 3 or 4 o'clock that morning. He then stopped at a motel in Pacific, Missouri. Before going in, the defendant told her that if, while registering, she made any type of move, he would kill her and the desk clerk. They then went into the office and she registered, using her credit card.

In the motel room, the defendant ordered her to undress herself and then him. Over the course of several hours the defendant repeatedly raped and sodomized the victim. She observed that defendant had two tattoos, one was a cross, while the other was the name "Perry". In addition, she saw

that he had stretch marks on his abdomen and a scar on the bottom portion of his penis.

At approximately 9:00 a.m., while the defendant was going to the bathroom, she managed to escape, leaving behind her car keys and her purse (containing her driver's license and credit cards). Shortly thereafter, defendant left the motel in the victim's car.

The next day, October 19, the victim viewed a photographic lineup consisting of twelve photos. She identified the defendant.

On October 23, the defendant was arrested at a motel in Springfield, Ohio, after holding another woman captive in her motel room for six and one-half hours. At trial, the Ohio victim identified the gun the defendant had used when he gained entrance to her room; the gun was the same one used on the St. Louis victim. In addition, she described the same identifying marks on the defendant that the St. Louis victim had testified to (e.g., the tattoos of Perry and a cross, the stretch marks, and the scar) and identified the defendant as her assailant. She also testified to a telephone conversation she overheard between the defendant and his mother concerning the incident in St. Louis. According to her, the defendant stated, "Hell yeah, I did it."

Following the defendant's arrest by the police in Ohio, they made a search of the Ohio victim's motel room. There they found the gun the defendant had used. They also found, on top of a television, the St. Louis victim's driver's license and seven of her credit cards, as well as the defendant's driver's license.

The police in Ohio also made an inventory search of the St. Louis victim's car, which was found at the motel. There they found a second gun hidden under some articles of clothing. In addition they found, among other things, the St. Louis victim's purse and checkbook; a St. Louis Post–Dispatch newspaper dated October 19, 1985, which contained an article about the abduction and rape of the St. Louis victim; and a credit card slip showing a purchase of gas on October 18 on one of the St. Louis victim's credit cards. This slip contained a signature of "Perry Mantia", as well as the victim's Missouri license plate number.

The first issue the defendant raises is that the trial court erred in admitting into evidence a gun, not connected with the offense on trial, found in the St. Louis victim's car following defendant's arrest. Both, at trial and on appeal, defendant stated that the admittance of this gun was error because it was evidence of other crimes and not relevant. We find that it was error to admit the gun into evidence, but that the error was harmless.

The defendant relies on *State v. Williams*, 543 S.W.2d 563 (Mo.App.W.D. 1976), where Williams, a passenger in the back seat of a car, was arrested after a police officer stopped the car and observed the butt of a gun sticking out from under his leg. After his arrest, another weapon was found under the passenger side of the front seat; the passenger seated there was also arrested for carrying a concealed weapon. The state entered the second weapon into evidence, kept it in front of the jury throughout the trial, and discussed it in its closing argument. The jury found Williams guilty of carrying a concealed weapon and assessed his punishment at five years' imprisonment.

In *Williams*, the court aptly stated the question, "What is involved then is basically the question of the *relevancy* of the evidence that [another passenger] also possessed a concealed weapon." [emphasis added]. *Id.* at 564. For evidence to be relevant, it "must logically tend to support or establish a fact or issue between the parties." *State v. Moore*, 435 S.W.2d 8, 11 (Mo.banc 1968). The *Williams* court reversed the conviction because of the absence of any logical connection with the offense charged and the inherently prejudicial nature of the demonstrative evidence of the second weapon. *Id.* at 566. Thus, the *Williams* court in effect said the evidence of the second gun was not relevant.

■ Likewise, in this case, the question raised is what is the relevancy of the gun

found under some clothes in the St. Louis victim's car, when that gun was not related to either the events in St. Louis or Ohio. How does the admission of that gun into evidence "logically tend to support or establish a fact or issue" concerning the five offenses for which the defendant was on trial? At trial and on appeal, the state's justification was "it was recovered in the inventory" of the St. Louis victim's car. Contrary to the state's position, the fact that an item is listed on an inventory does not make that item automatically admissible; its relevancy must still be shown. Such relevancy does not here appear.

■■■ Although the admission of the gun was error, we are unable to find that the defendant sustained prejudice as a result of its admission. Error, which in a close case might call for reversal, may be disregarded as harmless when the evidence of guilt is strong. *State v. Vernor,* 522 S.W.2d 312, 316 (Mo.App.E.D.1975). Here, the evidence of defendant's guilt was overwhelming, considering (1) the identification of the defendant by the St. Louis victim, especially her description of the tattoos on defendant; (2) the St. Louis victim's car being found at the same motel in Ohio where the defendant was arrested; (3) the St. Louis victim's driver's license being found in the Ohio motel room occupied by defendant; and (4) the Ohio victim's testimony that she heard defendant tell his mother, "Hell yeah, I did it". In addition, here, unlike in *Williams,* punishment was assessed by the court, and not the jury. Thus, because of the strong evidence of guilt and the fact that the jury did not assess the punishment, we find no reversible error. Point denied.

■■■ The second issue raised by the defendant is that the trial court erred in admitting testimony of an Ohio victim and an Ohio police officer concerning events involving the defendant which occurred at a motel in Ohio. Defendant claims that this testimony is evidence of other crimes and irrelevant. We find no error because the trial court sufficiently restricted the testimony to relevant facts, and details of the Ohio crimes were not revealed.

In his written pre-trial motion, the defendant asked the court to strike the Ohio victim as a witness. In support of his motion, he cited *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304 (1954); and *State v. Atkinson,* 293 S.W.2d 941 (Mo.Div. 1 1956). However, when the motion was presented to the court, he, in effect, orally modified his motion by saying "my motion now is that she could say what she heard, that would seem to be some sort of admission against Mr. Mantia's interest, but, again, not the details of what happened to her." The trial court ruled that the Ohio victim could "testify to everything except the essence of the crime, rape and sodomy ... She can testify that she observed him and what she saw ... the gun is tied in, and I'm going to let her testify that he pulled that gun and stuck it in her face." Defendant also referred the trial court to *State v. McElroy,* 518 S.W.2d 459 (Mo.App.S.D. 1975).

At trial, the Ohio victim testified that she was staying at a motel and in response to a knock on the door, she opened it and the defendant pushed in with a gun. Once inside, the defendant tore up sheets and tied her hands and feet and he went through her purse. Someone called the police, they came, and there were hours of negotiation between the defendant and the police. During the time that the negotiations were going on, the defendant made a comment that he "didn't know St. Louis knew that he was there". The defendant wanted to talk to his mother, which the police arranged, and the Ohio victim heard his side of the telephone conversation including his comment that "Hell yeah, I did it. But she was asking for it, she was a tramp". The Ohio victim saw the defendant without any clothes on, and observed that he had two tattoos, "Perry" and a cross, as well as stretch marks on his stomach and a scar on his penis. Finally, she identified the St. Louis victim's credit cards and driver's license, as well as the defendant's driver's license, as being on top of the television set in the motel room.

*Reese,* cited by both the state and defendant, involved the death of a clerk during a

robbery of a hotel committed by Reese and another. Both men wore masks. At trial, evidence was admitted, over objection, that about two hours after the hotel robbery, Reese was involved in an attempted holdup of a liquor store. Reese was asked if he had the gun all evening to which he responded "I had the Luger all evening." Bullets from the Luger were found in the hotel and a bullet from that type of gun killed the hotel clerk. The evidence of defendant's admission was proved by "an array of police officers in whose presence it was made." *Id.* at 306. Because the state could not suggest, nor the court find, any relevancy the details of the holdup had on the issue of the defendant's guilt of the murder charge, the court concluded that the introduction of those details constituted reversible error.

According to Shepard's Missouri Citations, Case Edition, Part 3, 1987, *Reese* has been cited 187 times, almost exclusively on the issue of when evidence of other crimes is admissible. Most often, the phrase quoted is:

> Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial. *Id.* at p. 307.

In many of the cases citing *Reese,* the opinion proceeds to "pigeon-hole" the particular evidence in the case into one of the five mentioned categories, sometimes with difficulty. However, *Reese* does not mandate that such evidence must fall into one of the five categories, for, proceeding the above quotation, *Reese* says that "proof of the commission of separate and distinct crimes is not admissible, *unless such proof has some legitimate tendency to directly establish* the defendant's guilt of the charge for which he is on trial". (emphasis added) *Id.* at 307. Also, following the quotation setting out the five categories, *Reese* says, "If it is logically pertinent in

that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime." *Id.* at 307. After saying that trial courts should subject the evidence to rigid scrutiny, *Reese* stated that a court should reject the evidence if the "court does not clearly perceive the connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy". *Id.* at 307.

In discussing relevance, McCormick says:

> Analyzing and weighing the pertinent costs and benefits [to determine if evidence is relevant] is no trivial task. Wise judges may come to differing conclusions in similar situations. Even the same item of evidence may fare differently from one case to the next, depending on its relationship to the other evidence in the cases and the importance of the issues on which it bears. Accordingly, much leeway is given trial judges who must fairly weigh probative value against probable dangers.

*McCormick on Evidence,* 3d Ed. (1984), § 185, p. 546–547. *See also, McCormick,* § 190, p. 557–565, for a discussion concerning the relevancy of "other crimes evidence", as well as *Mo.Evidence Restated,* § 404(b) (Mo.Bar 1984).

Here, the trial court exercised its discretion and determined the parameters of what would be relevant for the Ohio victim to say. Defendant acknowledged that he could not object to the admissions he made which were against his interest. Since his statements were clearly admissible, it was proper for the Ohio victim to briefly describe the situation that allowed her to hear those statements. The gun she identified was the same one which the St. Louis victim identified, and, since the defendant was arrested and taken into custody in Ohio, such testimony tied that particular gun to the defendant. The same thing can be said about her observations of the tattoos, stretch marks, and scars; they clearly identified those characteristics with this defendant. Finally, her identification of the defendant's driver's license and the credit

cards and driver's license of the St. Louis victim were relevant in tying the defendant to the St. Louis victim.

*Atkinson, supra,* p. 942, does not aid defendant. There, error was found because the trial court allowed evidence of other similar crimes that the defendant was committing at the same time as the one for which he was on trial. The state's argument that the evidence of other similar crimes "would tend to show that the defendant committed the crime with which he is charged" was rejected. *Atkinson* is not applicable. Nor is *McElroy* on point, for like *Atkinson,* the evidence which the trial court permitted was evidence of a similar crime occurring at the same time as the one for which he was on trial. We find no reversible error was committed by the trial court in allowing the Ohio victim to testify as she did.

Defendant also claims that the Ohio police officer's testimony about defendant's arrest occurring during a "hostage situation" was irrelevant and proof of the commission of other crimes. The officer, in response to a question as to why he went to the motel, replied that it was in response to a call "with a possible hostage situation." Later, he said "we became aware that there was a lady being held hostage." While a less inflamatory word might be preferable, certainly the jury learned from other admissible testimony that a woman was being held in a motel room for hours while negotiations were taking place. In view of other testimony, the error, if any, was harmless.

Finding no reversible errors, we affirm.

SIMON, P.J., and CRANDALL, J., concur.