STATE of Missouri, Respondent,

v.

Terry Edward WILSON, Appellant.

No. 53257.

Missouri Court of Appeals,
Eastern District,
Division Five.

July 26, 1988.

Motion for Rehearing and/or
Transfer to Supreme Court Denied
Aug. 31, 1988.

Laurence G. Schmidt, Public Defender, Hillsboro, for appellant.

William L. Webster, Atty. Gen., William J. Swift, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Judge.

Defendant was found guilty by a jury of second degree murder, first degree robbery and first degree burglary. As a prior and persistent offender he was sentenced by the court to two consecutive terms of life imprisonment and a consecutive term of thirty years imprisonment. On appeal he contends the trial court erred in admitting his confession into evidence, in admitting evidence of his participation in another crime, in the admission of hearsay testimony and in refusing to disclose to him the ju enile records of prosecution witnesses. We affirm.

On December 18, 1985 Maplewood Police officers responded to a telephone call from a neighbor of Fred Harmon, an elderly man who lived alone. Advised Harmon had not been seen for four days, a police officer entered his house through an open window. The odor of gas was prevalent and blood stains and smears were observed in the kitchen and bedroom. A thorough search of premises failed to reveal Harmon until, after several hours, an officer was attracted by several items stacked on top of a freezer. Inside the freezer he found the frozen body of Harmon, his ankles and wrists bound by neck ties. A subsequent autopsy disclosed the cause of death was a combination of suffocation, hypothermia, and soft tissue trauma. Bruises were observed over the entire body, two ribs were broken and the spleen was bruised. The garage had been broken into and Harmon's car was missing.

Two days after the discovery of Harmon's body, defendant, in the company of Robert Walls, was arrested in Santa Monica, California in connection with a burglary. Both men gave police fictitious names. Three days later defendant, still using the name Jerry Edward Williams, admitted committing the Santa Monica burglary.

Harmon's car, found in an underground garage, was impounded by the Santa Monica police. After checking the car's registration, a Santa Monica officer contacted the Maplewood police, who advised him of a warrant for the arrest of defendant for Harmon's murder. Defendant's description was circulated to Santa Monica police and was recognized by one of the officers as matching their burglary suspect Jerry Edward Williams.

Santa Monica detective Shane Talbot, after giving defendant the Miranda Warnings, questioned him about the murder and obtained a detailed confession. Defendant related that he, Robert Walls and Tommy Thomas, on December 15, left a half-way house in St. Louis where they were living. They went to Harmon's house in order to get money and a car. Defendant explained how he lifted Walls into the open window and let Thomas in through a door. Once inside they pulled a sheet over Harmon's head while he was sleeping. Defendant was concerned that Harmon might recognize him because he had worked for Harmon around the house. Walls beat Harmon repeatedly with a role of duct tape until he began to bleed. They attempted to tie Harmon's hands with tape but were unsuccessful. Instead they used neck ties. After they tied him up and wrapped him in a sheet he was dragged from the bedroom down the hall and stuffed into a freezer. Harmon was still conscious and cried out "I'm going to die, I'm going to die." Thomas turned on the gas stove without the pilot light on thinking the house would blow up. Defendant took $80 from Harmon's wallet and Walls took his car keys. They broke into the garage and stole Harmon's car. Additional evidence disclosed that defendant's fingerprints were found in the car and in Harmon's house. A foot

print found in the blood on the kitchen floor matched the tread of defendant's tennis shoe.

■ On appeal defendant first contends the trial court erred in overruling his motion to suppress his confession, arguing that it was obtained by trickery and therefore involuntary. The voluntariness of a confession is judged by the totality of the circumstance. *State v. Evans*, 676 S.W.2d 324, 327 (Mo.App.1984). Defendant was advised of his constitutional rights prior to each interrogation in which incriminating statements were made. In each instance he acknowledged that he understood his rights and proceeded to speak freely. At no time did he request to speak to a lawyer. There is no evidence in the record suggesting any coercion or duress by the police in eliciting defendant's statements. Defendant contends he was tricked by officer Talbot because he was told their conversation was not being recorded. He also argues that implied promises were made to him that his situation would turn out better if he told the truth. He claims these factors rendered his confession involuntary and his waiver of the Miranda Rights "qualified".

■ Trickery does not necessarily render statements involuntary and therefore inadmissible. *State v. Phillips*, 563 S.W.2d 47, 54 (Mo. banc 1978). The rule in Missouri, as well as in a majority of states, is that statements obtained through subterfuge are admissible unless the deception offends societal notions of fairness or is likely to procure an untrustworthy confession. *State v. Molitor*, 729 S.W.2d 551, 556 (Mo.App.1987); *State v. Pugh*, 600 S.W.2d 114, 118 (Mo.App.1980). The subterfuge here, which detective Talbot admits, was that he told defendant he was not taping the interrogation when in fact he was. We do not find this brand of trickery so offensive as to render defendant's confession involuntary. Nor do we find it likely to procure an untrue statement. The trustworthiness of the statement is further demonstrated by the accuracy of the details which correspond to the physical evidence. Secret recordation of in-custody questioning of an accused, standing alone, is not unconstitutional. *Lopez v. United States*, 373 U.S. 427, 438–440, 83 S.Ct. 1381, 1387–88, 10 L.Ed.2d 462 (1963). There is also no merit to defendant's claim that his confession was rendered involuntary by "implied promises" that things would be better if he told the truth. Generally, an admonition to the accused that it will be in his or her best interest to tell the truth will not render a confession involuntary. *State v. Dixon*, 655 S.W.2d 547, 556 (Mo.App.1983). The statements made to the suspect must constitute either a threat or promise of leniency in order to render the confession involuntary. *State v. McLallen*, 522 S.W.2d 1, 3–4 (Mo.App.1975). Nothing in the record indicates that any threats or promises of leniency were made to defendant. We find nothing in the record to support his contention that the confession was involuntary due to trickery, promises of leniency or coercion. Similar attacks upon the confession by a codefendant were rejected by the Supreme Court in *State v. Walls*, 744 S.W.2d 791, 796–97 (Mo. banc 1988).

■ Defendant next contends the trial court erred in admitting evidence of his participation in a burglary in California. He argues that a burglary committed in California cannot have any legitimate tendency to establish his guilt of a murder committed in Missouri five days earlier. We disagree.

In *State v. Mantia*, 748 S.W.2d 785 (Mo. App.1988), this court found no error in the admission of evidence of other crimes committed by a defendant in Ohio four days after the commission of the Missouri crimes for which he was on trial. There we noted that the seminal case of *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304 (1954), established criteria for the admission of evidence of separate and distinct crimes. That is, such proof which (1) "has some legitimate tendency to directly establish defendant's guilt of the charge for which he is on trial ..."; (2) "if it is logically pertinent in that it reasonably tends to prove a material fact in issue"; and (3) that there is a clearly perceived "connection between the extraneous criminal transaction and the

crime charged, that is, its logical relevancy." *Mantia* at 789, quoting *Reese* at 307. Based upon these criteria, the Mantia court found no abuse of trial court discretion in admitting evidence of other crimes committed by the defendant in order to describe the circumstances in which the defendant made admissions and to show his possession of items connected with the crime for which he was on trial. Here, where defendant challenged the voluntariness of his confession to the Santa Monica police officer, the circumstances surrounding the confession were certainly relevant. The seizure of defendant's shoes by the Santa Monica police because the tread matched footprints outside a burglarized house was clearly connected to the identification of these shoes as matching the bloody footprint found in the murder victim's kitchen.

In *State v. Churchir*, 658 S.W.2d 35 (Mo. App.1983) we held the admission of evidence that a defendant had been arrested for an unrelated burglary was not erroneous, because it was necessary to explain the reason underlying the police investigation, which disclosed the evidence connecting the defendant to the murder for which he was on trial. In the instant case, the fact that defendant was in custody charged with a burglary served to explain how suspicion of Harmon's murder focused upon him after the discovery of Harmon's car in which defendant's fingerprints were found. The relevance, and therefore the admissibility, of evidence which incidentally proves a defendant guilty of an unrelated crime, is sometimes found in the need to develop the "complete and coherent picture." *See State v. Humphrey*, 723 S.W.2d 427, 430 (Mo.App.1986); *State v. King*, 588 S.W.2d 147, 150 (Mo.App.1979). Thus, the investigation of one crime may involve an inquiry into another crime, to such an extent that the two become so inseparably connected that proof of one necessarily involves proving the other. *State v. Clay*, 686 S.W.2d 516, 518 (Mo.App.1985). The clear connection between defendant's arrest for burglary and his identification as a participant in the Harmon murder is sufficient to establish the relevance of the evidence relating to that arrest.

■ Defendant's third point on appeal charges the trial court erred in admitting hearsay testimony. A neighbor of Harmon's testified that Harmon had told him shortly before the murder that some of his guns had been stolen. Defendant's hearsay objection was overruled, based on the State's contention that the evidence was not offered as proof that the guns were stolen, but to show Harmon's state of mind. Apparently, the prosecutor wanted to use this evidence, combined with the defendant's admission (to detective Talbot) that Harmon had accused him of stealing guns, in order to refute defendant's claim that he and Harmon were such good friends and that he did not want to hurt the old man.

Testimony concerning statements made by another, when offered not of proof as the truth of the statements but merely to establish that they were said, is not inadmissible hearsay. *State v. Harris*, 620 S.W.2d 349, 355 (Mo. banc 1981); *State v. Johnson*, 637 S.W.2d 157, 161 (Mo.App. 1982). Moreover, the neighbor's testimony regarding the victim's statement, which did not mention defendant, was totally innocuous. Appellate review of challenges to the admission of evidence looks to the question of prejudice, not mere error. *State v. Tyler*, 676 S.W.2d 922, 924–25 (Mo.App. 1984). It is inconceivable that defendant could have been prejudiced by evidence of the victim's statement his guns had been stolen but which did not identify the thief. Finally, the incident pales into insignificance in the light of the testimony of another prosecution witness, that defendant told him he had stolen Harmon's guns, that he planned to rob Harmon, and would "manhandle and kill him" if necessary. Even assuming the evidence was improperly admitted, there is no prejudice and no error where the same facts are established by other evidence. *State v. Garrette*, 699 S.W.2d 468, 503 (Mo.App.1985).

■ Defendant's final point alleges the trial court erred in refusing to furnish him with the juvenile arrest records of certain prosecution witnesses. At trial, defend-

ant's attorney requested an order compelling the State to disclose these records, on the suspicion that they would show "bad acts" relating to the truthfulness and veracity of the witnesses. The court refused to order disclosure of any information other than convictions. We find no error.

The confidentiality of juvenile court and juvenile arrest records is ensured under sections 211.271 and 211.321 RSMo 1986. In *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the Supreme Court of the United States concluded that a defendant's constitutional right of confrontation and cross-examination overrides the public policy of the state to protect the anonymity of juvenile offenders. In reaching this conclusion the court distinguished between impeachment of a witness through cross-examination which makes a general attack upon the credibility of the witness, as through evidence of prior convictions, and cross-examination which attacks bias and the motivation of the witness. In *Davis*, the juvenile witness was on probation by order of the juvenile court. The proposed cross-examination was directed toward establishing the witness's fear that his probation would be revoked if he refused to testify against Davis. Denial of this cross-examination was held to constitute a deprivation of a constitutionally protected right. However, the teaching of *Davis* has been limited to its particular facts and has not been extended to authorize invasion of juvenile adjudications or records merely to afford a general attack upon the credibility of a witness. Here defendant argues he "was interested in utilizing prior bad acts of the witnesses which would affect truthfulness". The breaching of juvenile confidentiality for this purpose was rejected by the Supreme Court of Missouri in *State v. Russell*, 625 S.W.2d 138, 141 (Mo. banc 1981), where, in discussing the limited scope of *Davis v. Alaska*, the Court stated,

> This right permits proof of the bias which could result from the juvenile witness's motive to lie because he is a suspect and subject to control of the juvenile authorities. It does not hold that a state court must permit the general credibility

of a juvenile to be attacked by a record of juvenile adjudication or unrestrained cross-examination concerning such adjudication or acts of misconduct. *State v. Tolliver*, 562 S.W.2d 714 (Mo.App.1978); *State v. Walters*, 528 S.W.2d 790 (Mo.App.1975); *Hampton v. State*, 172 Ind. App. 55, 359 N.E.2d 276 (1977).

The Judgment is affirmed.

SATZ and GRIMM, JJ., concur.