**STATE of Missouri, Respondent,**

v.

**Derrick COBB, Appellant.**

**Derrick COBB, Movant–Appellant,**

v.

**STATE of Missouri, Respondent.**

**Nos. 67162, 68518.**

Missouri Court of Appeals,
Eastern District,
Division One.

April 16, 1996.

Ellen H. Flottman, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Fernando Bermudez, Assistant Attorney General, Jefferson City, for respondent.

KAROHL, Judge.

Derrick Cobb, defendant, appeals after the court imposed a thirty year sentence for second degree murder. He claims plain error in the court's allowing a witness to testify he and defendant used cocaine together. He argues the testimony was totally irrelevant and prejudicial. He also appeals for relief under Rule 29.15 for his counsel's failure to call witnesses who could provide him with a defense. We affirm.

■ A jury found defendant guilty of second degree murder in the death of Thomas Crimi. Defendant contends the trial court plainly erred in allowing Michael Harris to testify he and defendant used cocaine together several hours after Tom Crimi was murdered and his car stolen by the murderer. Harris testified as follows about events which occurred several hours after Tom Crimi was killed:

Q. Now, after you and Derrick—after you purchased the tires from Derrick and you put them in your basement you stated that you drove around with Derrick?

A. Uh-huh.

Q. Did you and Derrick discuss anything at that time?

A. No. At that time we went and got some coke, and we rode around and got high.

Q. And by coke you don't mean Coca Cola?

A. Crack Cocaine.

Q. And was this crack cocaine?

A. Yes.

Q. And how do you use that? Do you smoke it?

A. Smoke it.

Q. After you purchased the tires, then you drove around and you got high on crack cocaine with Derrick Cobb; is that correct?

A. Yes.

Q. And who purchased that cocaine, do you know; do you remember?

A. Derrick.

Q. And after that, what, if anything, did you do?

A. Well, after that we basically rode around the neighborhood getting high. We would stop and park and eat. Then we would get a hit and ride around some more. And just more so like stop, get a hit, and move around.

Q. And at some point did you go back and put those tires that you had purchased from Derrick on your car?

A. Yes. Yes, I did. About the time we had finished that we went back and put the tires on my car, and the two tires that I had we took and we sold to another guy that had a green pickup truck.

Q. And you got some money from him?

A. No, we didn't. We went up to—I think at the time was it Mobile? (sic). No it was a Sinclair or a Fina gas station. And about that time or a little while later the guy came by and gave Derrick some weed, and we took the weed and exchanged it for some more crack.

Q. Again, for somebody who might not know, by "weed" you mean marijuana?

A. Yes.

Q. Did you purchase the marijuana with the tires, and then you traded the marijuana for some crack?

A. Yes.

Q. Now, Mr. Harris, at some point after this transaction occurred, did you and Mr. Cobb then drive around in the car with the new wheels on it?

A. Yes.

Q. Are you the one driving your wife's car?

A. Yes.

Q. And at some point did you begin discussing your activities from the evening before?

A. Yes.

Q. That is the Saturday night before?

A. Yes.

Q. What did you tell Mr. Cobb then?

A. I told him that I had went to a friend named Keith's wedding reception or wedding—he had like a wedding party.

Q. This is what you told Mr. Cobb you had done?

A. Yes.

Q. Did you ask Mr. Cobb what he had done that night before?

A. He said he had f___ up. He, you know, ripped off, you know, a guy, a white guy.

Q. I don't want to embarrass you, but can you state it again a little more loudly.

A. He said that he had f___ up. I tripped—he ripped off a white guy.

Q. And for the people who don't know what the expression tripped means, what did that mean to you?

A. Something unusual or dumb.

Q. I mean, the expression tripped means something unusual?

A. Yeah, made a mistake. I tripped, you know.

Q. It means he made a mistake?

A. Yeah.

Q. After he said that to you, did you ask him for any further explanation?

A. No.

Q. Did that make you feel uncomfortable that he had said that?

A. No.

Q. What did you do after he told you that?

A. After that we just drove around some more and finished getting high.

Q. And then you went home?

A. Well, we drove around for a little while longer, and it was about this time that I—it started getting dark, and I was beginning to get paranoid about my wife looking for her car, so I was getting ready to go home. . . .

■ Under the plain error rule relief will be granted only when the error "so substantially affects the rights of the accused that a 'manifest injustice or miscarriage of justice inexorably results if left uncorrected.'"

*State v. Sidebottom,* 753 S.W.2d 915, 920 (Mo. banc 1988).

■ The rule regarding admission of evidence of uncharged crimes is:

Ordinarily, the State may not introduce evidence of the accused's other criminal acts to show a probability that he committed the crime in question. When such evidence is relevant for some other purpose, however, it should not be rejected merely because it incidentally proves the defendant guilty of another crime.

*State v. Churchir,* 658 S.W.2d 35, 37 (Mo.App 1983).

■ The following exceptions were noted in *State v. Wilson,* 755 S.W.2d 707, 709–710 (Mo.App.1988) while discussing *State v. Mantia,* 748 S.W.2d 785 (Mo.App.1988):

[T]he seminal case of *State v. Reese,* 364 Mo. 1221, 274 S.W.2d 304 (1954), established criteria for the admission of evidence of separate and distinct crimes. That is, such proof which (1) "has some legitimate tendency to directly establish defendant's guilt of the charge for which he is on trial . . ."; (2) "if it is logically pertinent in that it reasonably tends to prove a material fact in issue"; and (3) that there is a clearly perceived "connection between the extraneous criminal transaction and the crime charged, that is, its logical relevancy." *Mantia* at 789, *quoting Reese* at 307. Based upon these criteria, the *Mantia* court found no abuse of trial court discretion in admitting evidence of other crimes committed by the defendant in order to describe the circumstances in which the defendant made admissions.

Here, Harris' drug-use testimony described part of the circumstances under which defendant admitted his guilt. Defendant admitted he "tripped—he ripped off a white guy" the night before. The admission is meaningful because of defendant's possession of the deceased's car and tires from the car on the same day as the murder. During the afternoon defendant sold the tires from Crimi's car to Harris, rode around with Harris getting high on cocaine, installed the wheels on Harris' wife's car, sold her old

tires to get more crack, and rode around in her car with the new wheels. Harris testified while he and defendant rode around in his wife's car, they talked of their activities on the previous evening. Harris told defendant he went to a wedding. Defendant told Harris he had ripped off a white guy. Thus, the jury heard a witness who was high on drugs when he heard defendant, who had possession of a stolen vehicle, admit "tripping and ripping off a white guy" the night before. The charged crime did not require proof of criminal drug activities but proof of such activities did not cause a manifest injustice. The evidence did not tend to lessen the state's burden of proof on the elements of the charged crime nor was it purely prejudicial in a manner that denied defendant any substantial right. We find no plain error by the trial court in the admission of Harris' drug activity testimony. We find no manifest injustice. Point One denied.

■ Defendant's Rule 29.15 appeal claims ineffective assistance of counsel because available witnesses were not called. Defendant claims the witnesses, if called, would have provided evidence from which the jury could have found someone else had the deceased's car shortly after the killing. Thomas Crimi was murdered as he sat in his car in front of his home in Jennings. At 3:50 a.m., a neighbor saw Crimi's body being shoved out of his car. The neighbor could not identify who then drove away in his car. An hour and ten minutes later, at 5:00 a.m., a security guard at St. Louis University stopped an attack on three women. The attacker ran to a car, which was identified as the one driven away from Thomas Crimi's home. The guard identified the defendant as the attacker. Movant alleges the three women would have testified a man driving the victim's car attacked them, but the attacker was not defendant. Movant contends this would have provided him with a reasonable doubt defense.

■ In *State v. Twenter*, 818 S.W.2d 628, 639–640 (Mo. banc 1991), the Missouri Supreme Court held:

To establish a claim of ineffective assistance of counsel for failing to locate and interview witnesses, the defendant must

show not only that the witnesses could have been located through reasonable investigation, but it must also be shown that the witnesses would testify if called, and that the testimony would have provided a viable defense.

In *State v. Blankenship*, 830 S.W.2d 1, 16 (Mo. banc 1992), the Missouri Supreme Court held:

In order to be entitled to an evidentiary hearing, a movant must 1) cite facts, not conclusions, which, if true, would entitle movant to relief; 2) the factual allegations must not be refuted by the record; and 3) the matters complained of must prejudice the movant. An evidentiary hearing is not required if the motion court determines that the motion and the files and records of the case conclusively show that the movant is entitled to no relief. Rule 29.15(g). Appellate review of a motion court's action is limited to a determination of the findings and conclusion of whether the motion court are clearly erroneous. Rule 29.15(j).

■ We focus on whether movant was prejudiced by the motion court's denial of an evidentiary hearing. Here, movant alleges testimony by the three women would have refuted testimony by the St. Louis University security guard. That is true if the women would confirm that allegation at a hearing. At a lineup, the guard identified movant as the man who fled in the victim's car after attacking the three women. If no additional evidence linked movant to the murder, the failure to offer available witnesses to prove the guard's identification was mistaken could be prejudicial ineffective assistance.

However, here, substantial direct evidence supported a finding movant murdered Thomas Crimi: 1) Michael Harris' testimony that movant told him he "tripped—ripped off a white guy" the night before; and 2) testimony by Michael Boyd, a cellmate, that movant told him they had nothing on him on this charge because he was wearing gloves. There were also the inferences from defendant's possession of decedent's car. The verdict did not rest or fall on the guard's identification. Nor would the testimony of the three women provide movant with a full,

viable defense. If they identified another man with the car at 5:00 a.m., that would not be alibi testimony for an event at another location at 3:50 a.m. At most, it would support a reasonable doubt argument. In view of the other evidence of guilt, the failure to call the three women to testify about a matter which would not offer a defense was not prejudicial ineffective assistance.

 The motion court found defendant's counsel did not call the three women as witnesses based on trial strategy. The basis for the court's ruling is questionable as no evidentiary hearing was held and there is no apparent reason to support that conclusion. Nevertheless, the result reached is correct. The Rule 29.15 order is affirmed.

Affirmed.

REINHARD, P.J., and GRIMM, J., concur.