**STATE of Missouri, Respondent,**

v.

**Richard W. DAVIS, Appellant.**

No. WD 35439.

Missouri Court of Appeals, Western District.

Jan. 8, 1985.

As Modified March 5, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 5, 1985.

Application to Transfer Denied April 2, 1985.

**504**

J.D. Williamson, Jr., Independence, for appellant.

Albert Riederer, Pros. Atty., Kansas City, for respondent.

Before KENNEDY, P.J., and NUGENT and BERREY, JJ.

BERREY, Judge.

Richard W. Davis defendant below, appellant herein (hereinafter defendant), was convicted by a jury of violating § 565.090, RSMo 1978, harrassment, a class A misdemeanor. The indictment alleges he called a telephone number at 3602 S. Slayton, Independence, Missouri, anonymously for the purpose of frightening and disturbing R.A.E. and M.L.W. The jury assessed and declared the punishment at fifteen (15) days in the county jail and in addition a fine. The judge imposed a fine of $100.

Davis assigns three points as error: (1) that the evidence was insufficient to support a conviction; (2) that the defendant's statement to police was involuntary and should have been suppressed; and (3) that the prosecuting attorney erred in commenting on defendant's failure to call certain witnesses that were equally available to state and defendant and their testimony would have been cumulative.

Davis had a friend, Terry Boone, who was incarcerated in the Jackson County jail charged with rape and sodomy of R.A.E. and M.L.W. on November 1, 1982.

Between November 14 and November 20 the women received several anonymous calls. R.A.E. reported one call about 1:30 a.m. on November 14, 1982, in which the caller said, "I have something of yours," and she hung up. There were "at least a couple" of calls after that which R.A.E. did not answer. She added, "It sounded like a man's voice, but it was whispered and I really couldn't tell very much."

M.L.W. testified she answered the phone on November 15, 1982, and, "A voice basically whispering, I don't remember exactly

what they were whispering, 'I'll be back,' or something like that."

It was at this point the women notified the Independence police department and requested their "line be tapped."

The following Saturday, November 20, 1982, about 5:00 p.m. another call was received by M.L.W. "It was another voice whispering saying, 'I want—' and I didn't let them say too much more, I just gave the date and the time and then hung up." She also testified she could not identify the voice.

State's Exhibit No. 1 was a record of the phone trap and the calls made to the victim's phone. On November 20, 1982, at 17:04 (5:04 p.m.) the exhibit reflects number 12100 appearing opposite that phone number. Richard W. Wright, staff manager of security for Southwestern Bell Telephone Company, testified to the correlation between the 12100 and the phone number of defendant's parents, Mr. and Mrs. Marion Beard. He said the phone was located at 3700 Queenridge, Independence, Missouri, and explained that the phone company uses a "translation device" to locate the incoming phone call that is "trapped." Exhibit No. 1 also contained the translation and the trace result and was received without objection. The information was subsequently relayed to Officer Gordon Brown of the Independence, Missouri, Police Department.

Later Brown talked with the Beards and learned that Richard Davis, step-son of Marion Beard, lived with them at 3700 Queenridge, Independence, Missouri. Brown learned that when the Beards got home about "5:00 p.m. or later," the evening of November 20, 1982, no one else was home. The detective was told by Mrs. Beard that Richard had gone to Garden City, Missouri to visit his sister. Mr. Beard stated Richard had gone about 11:30 a.m. and Mrs. Beard stated that when she talked to her daughter about 12:30 or 1:00 the daughter advised her that Richard was "there and he was all right." As a result of this information Brown contacted the defendant.

In response to Brown's request the defendant, accompanied by his sister, went to the Independence, Missouri, Police Department where Brown interrogated him.

Davis told Brown he had received several collect calls from Boone while Boone was held in the Jackson County jail. He also told Brown that Boone told him to call a certain phone number, "to talk real soft to the girl and tell her that she was a bitch." Davis admitted calling the number three times. In his statement Davis said he felt Boone "might do some harm to my house and car.... that he might beat me up ... if I didn't make these phone calls." Davis said he would not use vulgarity and according to the victims the caller did not use foul language. Davis remembered calling the number on different days but claimed he no longer knew the number.

The defendant alleges that the evidence was not sufficient to convict. The evidence is coupled with defendant's statement to officer Brown that indeed he did make about three calls to the women.

In considering sufficiency of the evidence all evidence must be viewed in the light most favorable to the verdict. No consideration is given contrary or adverse evidence and inferences. *State v. Burnau*, 642 S.W.2d 621, 623 (Mo. banc 1982); *State v. Giffin*, 640 S.W.2d 128, 130 (Mo.1982).

We are not to weigh the evidence. Our review is limited to determining if there was sufficient evidence from which reasonable persons could have found the defendant guilty as charged. *State v. Kelly*, 539 S.W.2d 106, 109 (Mo. banc 1976).

█ From the evidence herein, viewed in light most favorable to the verdict, there is no doubt that a submissible case was made.

The defendant received calls from Terry Boone, the alleged rapist. The defendant admitted making calls to the rape victims and one such call was "trapped" by Southwestern Bell Telephone equipment as coming from defendant's home. Although the defendant presented an alibi, the jury chose to disbelieve him. The credibility of the

witnesses and the weight to be accorded their testimony was for the jury and not within purview of appellate review. *State v. Chester*, 445 S.W.2d 393, 397 (Mo.App. 1969); *State v. Giffin, supra*, at 130–31.

The state's case herein did not rest solely on circumstantial evidence. The defendant had given a statement to the police department admitting the calls. *State v. Franco*, 544 S.W.2d 533 (Mo. banc 1976); *State v. Thomas*, 452 S.W.2d 160, 162 (Mo.1970); *State v. Ramsey*, 368 S.W.2d 413, 416 (Mo. 1963).

■ Defendant alleges that his statement should be suppressed because it was coerced by Officer Brown and not voluntary. The defendant is a twenty year old high school graduate. Defendant in response to a request from Brown appeared at the Independence, Missouri, Police Department on December 8, 1982, accompanied by his sister who did not sit in on the interrogation. At this time he executed State's Exhibit No. 6, a document entitled "Warning and Waiver of Rights," in three places. A suppression hearing was held and the trial court found that the defendant was given the *Miranda* warning and understood it. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Pursuant to this interview he gave an oral statement which was reduced to writing and executed. He acknowledged receiving at least five calls from Terry Boone who was in the Jackson County jail awaiting trial for the rape of two women. He acknowledged Boone gave him a phone number and told him to call it and make statements to the person who answered. He admitted calling the number at least three times. His statement about the calls and their content and the evidence the two women gave was virtually identical.

Officer Brown first gave Davis the "warning of rights." He read it to him and Davis read it and signed it. For the next fifty minutes they discussed the case; Brown told Davis what evidence he had and what acts Davis had done. Davis talked about his involvement. Brown asked Davis if he wished to make a statement and read him the second half of the "waiver of rights" form. Defendant signed the waiver as well as the certification.

Defendant gave his statement which was reduced to writing by Brown. Defendant initialed each answer as well as any changes. Brown denied any threats, coercion, or intimidation of defendant. The defendant alleges Brown spoke harshly to him, threatened him with jail, the arrest of his parents and loss of their phone. Defendant also alleges Brown promised him he would "talk to the girls and the women about what happened and that everything would be all right." Davis was released to go with his sister and advised that he would be contacted if there was to be prosecution.

■ The court is mindful of its responsibility to give due regard to the trial court to judge the witness's credibility. *State v. Dixon*, 655 S.W.2d 547, 554 (Mo.App.1983). The admission of a confession is a matter of discretion by the trial court and will not lightly be disturbed. *State v. Flowers*, 592 S.W.2d 167, 170 (Mo. banc 1979).

From the facts presented the trial judge could have concluded, as he so stated, that defendant received and understood his rights under *Miranda*. *Miranda v. Arizona, supra*.

Points I and II are ruled against defendant.

For his final point on appeal the defendant alleges the trial court erred in permitting the prosecuting attorney to draw a negative inference from the fact that defendant's parents did not testify.

■ It is improper for a party to raise negative inference in argument when the witness not called is equally available to both sides or the testimony would be corroborative or cumulative. *Barnett v. Equality Sav. & Loan Ass'n Inc.*, 662 S.W.2d 924, 927 (Mo.App.1983).

■ However, we do not know nor can we presume that the testimony of the par-

ents of the defendant would have been either corroborative or cumulative. Neither did the state. The only evidence regarding Beard's knowledge of the facts came from Officer Brown. It is quite possible that upon cross-examination their memory might be refreshed adversely to the best interests of their son.

It is likely that defendant's parents knew facts relevant to the issue at trial and since they were not equally available to the state the state's comments were proper.

The word "available" as used herein is not necessarily restricted to mean that either party may subpoena the witness. If the relationship of the witness to the party is such that one would reasonably be expected to testify in favor of that party the witness is not equally available.

In *Pointer v. Pointer*, 251 S.W.2d 334 (Mo.App.1952) the court held that failure to call such a witness gives rise to a logical inference that their testimony would be damaging rather than favorable.

 The prosecuting attorney may comment on the failure of the defendant to call witnesses available to him who might be expected to give testimony in his favor. *State v. Moore*, 620 S.W.2d 370, 373 (Mo. banc 1981).

Whether a witness is equally available depends on several things:

1. one party's superior means of knowledge of the existence and identity of the witness;

2. the nature of the testimony that the witness would be expected to give in the light of his previous statements or declarations, if any, about the facts of the case; and

3. the relationship borne by the witness to a particular party as the same would reasonably be expected to affect his personal interest in the outcome of the litigation and make it natural that he would be expected to testify in favor of one party against the other.

*Hill v. Boles*, 583 S.W.2d 141, 145–46 (Mo. banc 1979); *Leehy v. Supreme Express and Transfer Co.*, 646 S.W.2d 786, 790 (Mo. banc 1983). The Beards were not equally available to the state and therefore it was not error for the state to comment on defendant's failure to call his parents to testify on his behalf. Point III is ruled against defendant.

Judgment affirmed.

All concur.