**STATE of Missouri,**
**Plaintiff–Respondent,**

v.

**Charles SWEDERSKA,**
**Defendant–Appellant.**

No. 57322.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 15, 1991.

Melinda K. Pendergraph, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Andrea K. Spillars, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

PUDLOWSKI, Judge.

Defendant, Charles Swederska (hereinafter Swederska), appeals from his conviction after a jury trial of: (1) leaving the scene of an accident; (2) tampering with physical evidence; and (3) driving with a revoked license. The trial court sentenced Swederska to concurrent terms of five years imprisonment for the first two charges and imposed a five hundred dollar fine for the driving with a revoked license charge.

On appeal from a criminal conviction, we review the evidence in the light most favor-able to the state. *State v. Guinan,* 665 S.W.2d 325, 327 (Mo. banc 1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). With this in mind, the events as adduced at trial were as follows:

On August 7, 1988, at approximately 1:35 in the morning, at the 5000 block of Gravois in St. Louis,[1] Ricky Delashmit (hereinafter Delashmit) was hit and killed by two automobiles. Delashmit was out that evening with his friend Joseph Defrancesco (hereinafter Defrancesco) and the accident occurred when they were crossing Gravois. On their way across the street, Delashmit stopped in the center on the yellow line to talk to two of his friends, Melvin and Kimberly Mathina. Defrancesco continued to the east side of Gravois and stopped on the curb to talk to two friends of his, Ray May [sic] and Rick Meyers. Defrancesco was facing away from Gravois during this time.

When their conversation with Delashmit ended, the Mathinas proceeded to the west side of Gravois. Soon thereafter, both the Mathinas and Defrancesco heard a loud noise like a thud and turned to look at the street. They saw a Camaro roll over Delashmit's body and drag it for a short distance. The Mathinas viewed a light blue truck driving south from the scene at a high rate of speed.

Roy Kenner (hereinafter Kenner) and Marilyn Rogers were the driver and passenger respectively of the Camaro which rolled over Delashmit. As they headed north on Gravois, they saw a man standing on the center line. They also saw a truck heading south in the lane closest to the center line. Kenner, who was also in the center-most lane, began moving to the right and observed the driver's side of the truck hit the pedestrian. The impact threw Delashmit in front of Kenner's car. The car rolled over Delashmit and dragged him underneath it for a short distance. The truck did not stop.

Kimberly Holt (hereinafter Holt) was a passenger in a light green truck driven by Swederska in the early morning hours of August 7, 1988. Swederska and Holt had

---

1. Gravois consists of four traffic lanes with two lanes running both north and south.

attended a party on that night and were on the way home when Holt saw a man in the center of the street at the 5000 block of Gravois. As they approached the man, Holt looked to her right at some people standing outside a bar. She heard a thud and told Swederska to stop because he had just hit the man. Swederska did not stop but proceeded to his house where they spent the remainder of the night.

Two days later, Holt accompanied Swederska to a body shop he owned on Grand Avenue in St. Louis. Swederska removed the side mirrors and painted the truck red. Swederska then drove his truck to his house, parked it in the backyard, and covered it with tarpaulins.

On August 24, 1988, Detectives Alfred Berry (hereinafter Berry) and Kenneth Zysk (hereinafter Zysk) of the St. Louis City Police Department arrested Swederska on a warrant from the Fenton Police Department. The arrest was pursuant to a complaint of assault made by Holt. Later in the day, Zysk received a call from Holt. In that call she explained her relationship with Swederska and outlined the details of the accident on August 7.

On August 30, 1988, Zysk using an affidavit sworn to by Holt, obtained a search warrant for Swederska's yard. The police found a red pickup with a light green bed covered with tarpaulins. They seized the truck and took paint samples.

■ Appellant's first point on appeal alleges that the trial court erred in overruling appellant's motion for a mistrial claiming specifically that evidence of a crime not charged—driving while intoxicated, was improperly admitted and resulted in prejudicing the jury. We disagree.

The general rule provides that evidence of a crime other than the one charged is inadmissible. *State v. Franks*, 685 S.W.2d 845, 849 (Mo.App.1984). "However, 'evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common

scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial.'" *Id.* at 849, quoting *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (1955).

■ Another well-recognized exception to the general rule of inadmissibility, "permits proof of another crime, if the other crime is so linked together in point of time and circumstances with the crime charged that one cannot be fully shown without proving the other." *State v. King*, 588 S.W.2d 147, 150 (Mo.App.1979). This latter exception finds its relevance and admissibility in the "need to develop the complete and coherent picture." *State v. Wilson*, 755 S.W.2d 707, 710 (Mo.App.1988).

The Supreme Court in *State v. Buckles*, 636 S.W.2d 914 (Mo. banc 1982), restated [2] the test for the admissibility of evidence of the commission of crimes other than those charged.

The test of admissibility is whether the logical relevancy of the separate crime to a particular exception tends to prove a material fact in issue, a judicial question. If this requisite degree of relevancy cannot be clearly perceived, the accused should enjoy the benefit of the doubt and the evidence of a separate crime rejected.

*Id.* at 918.

In the present case, the issue of whether the testimonial evidence of Holt at trial regarding the amount of alcohol consumed by appellant was properly admitted and whether such evidence was prejudicial, arose in the following context:

Q: [by Prosecutor] Okay. Had you just left the party when you got down there [the 5000 block of Gravois] in the early morning hours?

A: [by Holt] Yes.

Q: Now, while you were at the party, did you have something to drink?

A: Yes.

Q: What did you drink?

---

2. The seminal case of *State v. Reese*, 364 Mo. 1221, 274 S.W.2d 304, 307 (1954), originally established the criteria for the admission of evidence of separate and distinct crimes.

A: About six or seven beers.

Q: Were there—how many people were at the party?

A: About twenty maybe.

Q: And the particular party that you were at, did you know who was throwing that party?

A: No.

Q: And why did you go to that particular party?

A: Because Charlie wanted me to go with him.

Q: And you did that, did you not?

A: Yes.

Q: Now, were you with Charlie during the whole time of that party?

A: Yes.

Q: Did he drink anything?

A: Yes.

Q: What did he have to drink?

A: About nine or ten beers and two shots of tequila.

Defense counsel then made a motion for a mistrial claiming the testimony was evidence of the uncharged crime of driving while intoxicated and was prejudicial to the defendant. The motion was overruled and the court further refused to instruct the jury to disregard the testimony since such a limiting instruction "would just emphasize it further in the minds of the jury."

During the side bar conference, the court determined that the evidence of alcohol consumption was not material to charges pending before the court. However, the court ruled against the declaration of a mistrial and refused to instruct the jurors to disregard the testimony.

We find that the trial court correctly assessed the materiality of this testimonial evidence—that it did not fit squarely into one of the exceptions to the general rule of inadmissibility. This evidence does tend to paint a "complete and coherent picture" of the events leading up to the commission of the crimes charged, but the exception as it has been interpreted by the Missouri courts requires that "the two distinct offenses be so inseparably connected that proof of one necessarily involves proving the other."

*State v. Lue*, 598 S.W.2d 133, 137 (Mo. banc 1980).

Although we agree with the trial court's assessment of the materiality or lack thereof, of this testimonial evidence, we do not feel the admission of the above testimony warrants the granting of such an extraordinary remedy as that of a mistrial. It should be noted that "[t]he declaration of a mistrial is a drastic remedy that should be employed only in extraordinary circumstances in which prejudice to the defendant can be removed in no other way." *State v. Schneider*, 736 S.W.2d 392, 400 (Mo. banc 1987, *cert. denied*, 484 U.S. 1047, 108 S.Ct. 786, 98 L.Ed.2d 871 (1988), quoting *State v. Davis*, 653 S.W.2d 167, 176 (Mo. banc 1983). The trial court is afforded a large degree of discretion to determine the prejudicial impact of events at trial because it is in a much better position to observe those events than is the appellate court. *State v. Sanford*, 772 S.W.2d 806, 808–9 (Mo.App. 1989). We therefore, will not disturb the trial court's decision of whether or not events at trial warranted the granting of a mistrial unless we determine that there has been an abuse of that discretion. *Id.*

In the present case, the trial court detected no prejudicial effect on the jury caused by the one sentence of Holt's testimony concerning the amount of Swederska's alcohol consumption. This is exceedingly apparent in the court's refusal to instruct the jury to disregard the testimony since it felt it would do more harm than good. The trial court's ruling was not an abuse of discretion since there were no extraordinary circumstances calling for a remedy as drastic as a mistrial. Point denied.

■ Appellant's second point alleges that the trial court erred in overruling appellant's motion for acquittal at the close of the state's case and then again at the close of the entire case, claiming the evidence was insufficient to sustain a conviction for tampering with physical evidence. Specifically, appellant contends that the state failed to prove the intent element of the crime of tampering with physical evidence,

as required by § 575.100 RSMo (1986).[3] A jury convicted appellant of violating § 575.100 and we must consider the evidence and all reasonable inferences supportive of the verdict in the light most favorable to the verdict, and disregard those portions of the record contrary to a finding of guilty. *State v. Dulany*, 781 S.W.2d 52 (Mo. banc 1989).

■ The evidence showed that Holt went to appellant's body shop with him only a few days after the accident. There appellant took off the mirrors and painted his green truck red. He then apparently drove the truck back to his residence and parked it in his backyard where police later found it, partially covered by a tarpaulin. The tarpaulin was covering the bed of the truck which was not painted.[4]

Although the state relied entirely on circumstantial evidence to show appellant's intent, "direct proof of the required mental state is seldom available and such intent is usually inferred from circumstantial evidence." *State v. Turner*, 623 S.W.2d 4, 7 (Mo. banc 1981). "Mental elements establishing that a defendant knowingly did an act may be proved by indirect evidence and inferences reasonably drawn from circumstances surrounding the incident." *Id.; State v. Abercrombie*, 694 S.W.2d 268, 271 (Mo.App.1985). This court does not weigh the evidence but instead determines whether there was sufficient evidence to allow reasonable people to find appellant guilty

of tampering with physical evidence. *State v. Dunavant*, 674 S.W.2d 685, 686 (Mo. App.1984). Considering all the evidence favorable to the state, it appears there was sufficient evidence for a jury to conclude the defendant was guilty. Point denied.

■ Appellant's third point alleges that the trial court erred in giving the verdict directing instruction, Number 8, for driving while his license was revoked because it failed to indicate that the jury had to find appellant had a culpable mental state. Our review of this point is governed by Rule 28.03 V.A.M.R., which requires that: "... *specific* objections to given or refused instructions and verdict forms *shall be required in motions for new trial* unless made on the record at the time of trial. *Objections made at time of trial* to the giving or refusing of instructions and verdict forms *may be supplemented or enlarged in motions for new trial.*" [Emphasis added].

■ Appellant did not *specifically* object at trial to the omission of a mental element requirement in the verdict director for Count III—driving with a revoked license. Appellant further did not *specifically* object to this omission in his motion for a new trial following the verdict of the jury.[5] We therefore find appellant's claim of error was not properly and timely preserved for this court's review.[6] *State v. Jackson*, 645 S.W.2d 725, 728 (Mo.App.1982). Point de-

3. All references to the Revised Statutes of Missouri are to RSMo 1986, unless otherwise indicated.

4. Appellant claims the evidence showing that primer was placed on the truck a week before the accident inferred that he already had intentions of painting the truck before the accident. The state is not required to conclusively establish guilt nor exclude every hypothesis of innocence. *State v. Overkamp*, 646 S.W.2d 733, 737 (Mo.1983). Further, we note that it is the duty of the jury to resolve any contradictions in the evidence presented. *State v. Sanders*, 628 S.W.2d 390, 392 (Mo.App.1982).

5. The relevant claim of error as contained in appellant's motion for a new trial was: "8. The Court erred in instructing the jury as to this misdemeanor Count III, by modifying M.A.I.

instructions and verdict forms and should have dismissed it from the jury's consideration." We find that appellant's claim of instructional error was too general for the trial court to be afforded an adequate opportunity for effective review, thereby frustrating the purposes underlying the specificity requirement of Rule 28.03.

6. We further decline appellant's invitation to engage in plain error review. "[P]lain error does not result in connection with instructions unless the court has so misdirected or failed to instruct the jury on the law of the case as to cause manifest injustice or a miscarriage of justice." *State v. Murphy*, 592 S.W.2d 727, 733 (Mo. banc 1979); *State v. James*, 641 S.W.2d 146, 148 (Mo.App.1982). We do not find the necessary manifest injustice in this case because of our disposition of appellant's fourth point.

nied.[7]

■ Appellant alleges in his fourth and final point that the trial court erred in overruling appellant's motion for judgment of acquittal at the close of the state's case and again at the close of all the evidence claiming that the evidence was insufficient to support a conviction of driving with a revoked license because there was no evidence of a culpable mental state. We disagree.

As we stated *supra*, "[i]n considering a contention that the state has failed to prove the elements of intent ... the court accepts as true all evidence and inferences tending to support the verdict and disregards all evidence and inferences to the contrary." *State v. Strickland*, 609 S.W.2d 392, 395 (Mo. banc 1980). "Direct proof of the required mental state is seldom available and such intent is usually inferred from circumstantial evidence." *State v. Turner, supra* at 7.

Appellant did not testify, but he stipulated that his operator's license was revoked prior to the seventh day of August, 1988, and on that date it was still in the status of revocation. Documentation of this revocation, namely appellant's official Missouri driver's record, was not admitted into evidence because of appellant's stipulation to the revoked status of his license. We find that such a stipulation, at a bare minimum, establishes that a jury could find beyond a reasonable doubt that in driving on August 7, 1988, appellant "knew or consciously disregarded a substantial and unjustifiable risk that his driver's license was revoked." *State v. Counts*, 783 S.W.2d 181, 183 (Mo.App.1990). Point denied.

Judgment affirmed.

GARY M. GAERTNER, P.J. and CRIST, J., concur.

---

**7.** The Supreme Court has recently approved MAI–CR3d 332.48 Driving While License Suspended, Revoked or Canceled, effective July 1, 1991, which instructs the jury to find a mental element.