**STATE of Missouri, Respondent,**

v.

**Nanetta FORD, Appellant.**

**No. WD 49705.**

Missouri Court of Appeals,
Western District.

July 25, 1995.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 29, 1995.

Application to Transfer Denied
Oct. 24, 1995.

Craig A. Johnston, Office of the State Public Defender, Columbia, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before FENNER, C.J., P.J., and KENNEDY and SMART, JJ.

FENNER, Chief Judge.

Nanetta S. Ford appeals from her conviction, after jury trial, of the class D felony of tampering with physical evidence, section 575.100, RSMo 1994,[1] for which she was sentenced to one year imprisonment. On appeal, appellant challenges the sufficiency of the evidence to support her conviction and contends that the trial court plainly erred in submitting Instruction No. 5, the verdict director, to the jury. The judgment of the trial court is affirmed.

■ On appeal we view the evidence and all reasonable inferences flowing therefrom in the light most favorable to the verdict. *State v. Swederska,* 802 S.W.2d 183, 187 (Mo. App.1991). Those portions of the record contrary to the jury's finding are discarded. *Id.*

In this light, the record reveals that appellant's husband, Christopher R. Ford, was under investigation for possession of a handgun and for vandalism of a vehicle. Ron Robbins, a Putnam County deputy sheriff, contacted appellant on January 11, 1993 at 10:15 p.m., and asked to speak with her concerning these investigations. She agreed. After denying that she had any knowledge concerning the vandalism incident, appellant was questioned about the handgun. She denied ever seeing a handgun and said that her husband couldn't have one "because of his background."

Brian Jarman, a friend of appellant and her husband, had been questioned by Deputy Robbins on January 11, 1993, regarding the investigations of Christopher Ford. Jarman told the deputy that he had seen Mr. Ford with a pistol on different occasions. On the night of January 11, 1993, at about 10:00 p.m. or 10:30 p.m., Jarman and his friend, Tim Probasco, went to get some food at the Steer Inn. They ordered a sandwich, picked it up and went over to appellant's house. Jarman stated that after he and Probasco arrived at the house, "Nan took me back into the bedroom and told me that she needed rid of a gun, to get rid of it, dispose of it, throw it away, or whatever." Appellant handed him a briefcase. He and Probasco took the briefcase containing the gun and left. They took the gun to Jarman's house and then returned to appellant's home. Appellant told Jarman that if he was worried about the gun, she would pick it up the next day, take it to the farm and dispose of it. In the early hours of January 12, Jarman telephoned Deputy Robbins and informed him that he had the gun associated with the Christopher Ford investigation.

Deputy Robbins picked up the briefcase, given by appellant to Jarman at Jarman's residence, on the morning of January 12, 1993. Inside the briefcase, among other things, was a Stallard Arms 9 MM semi-automatic handgun, two clips for the gun (one empty and one full), a holster and a box of 9 MM rounds. Deputy Robbins called appellant and she met with him at the sheriff's office. Appellant was read her *Miranda*[2] rights. She reiterated that she knew nothing about a 9 MM pistol. Deputy Robbins then showed the briefcase and the weapon to appellant. She told him that she had seen the weapon once before when a guy was trying to sell it. A short time later appellant gave two written statements to the deputy. She stated that the pistol was her weapon and that the sheriff had told her she could not register it or get a permit because of her husband's background. She claimed that this made her mad so she kept the gun. She further claimed that she had acquired the gun by trading a shotgun for it with Jason Phillips.

### Sufficiency of the Evidence

In her first point, appellant contends that the trial court erred in overruling her motions for judgment of acquittal, in accepting the jury's verdict, and in sentencing appellant because the evidence was insufficient to support her conviction. She claims that the evidence presented at trial did not establish beyond a reasonable doubt that she concealed a handgun; that she concealed a handgun for the purpose of destroying its availability in an official investigation; that she knew there was an ongoing investigation

---

1. All sectional references are to Missouri Revised Statutes 1994, unless otherwise indicated.

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

of her husband; that the concealment of the handgun impaired or obstructed the prosecution of her husband on charges connected with his possession of a concealable weapon; and that Christopher Ford had been convicted of a dangerous felony.

■ In reviewing a claim that the evidence is insufficient to support a verdict, all evidence is viewed in the light most favorable to the verdict; no consideration is given to contrary or adverse evidence. *State v. Davis*, 686 S.W.2d 503, 505 (Mo.App.1985). This court determines whether the state adduced evidence sufficient to justify submission to the jury. *State v. Luna*, 800 S.W.2d 16, 19 (Mo.App.1990). To warrant submission, the evidence must be sufficient for a rational trier of fact to find all essential elements of the crime beyond a reasonable doubt. *State v. Horn*, 777 S.W.2d 656 (Mo. App.1989). The jury is free to believe all, some or none of any witness' testimony in arriving at its verdict. *State v. Dulany*, 781 S.W.2d 52, 55 (Mo. banc 1989).

With regard to the crime of tampering with physical evidence, section 575.100 states, in pertinent part:

1. A person commits the crime of tampering with physical evidence if he:

(1) Alters, destroys, suppresses or conceals any record, document or thing with purpose to impair its verity, legibility or availability in any official proceeding or investigation....

2. Tampering with physical evidence is a class D felony if the actor impairs or obstructs the prosecution or defense of a felony....

■ Appellant's first contention is that the evidence did not establish that she had "concealed" a handgun. At most, she argues, the evidence shows she "transferred" the gun to Jarman. Furthermore, she claims that the evidence does not support the inference that she concealed the handgun "with the purpose to impair its ... availability" in the investigation of Christopher Ford. The word "conceal" is defined as "(1) to prevent disclosure or recognition of ...; or (2) to place out of

sight...." Webster's Third New International Dictionary 469 (1971).

The evidence shows that appellant tried to "conceal" the gun, placing it out of sight. By giving the gun to Jarman, it is inferable that appellant was trying to prevent the gun from being connected to her or to her husband. Jarman's testimony on this point is revealing: "Nan took me back into the bedroom and told me that she needed rid of a gun, to get rid of it, dispose of it, throw it away, or whatever." Moreover, appellant told Jarman that if he was worried about the gun, she would pick it up the next day, take it to the farm, and dispose of it. The evidence establishes that appellant, by giving the gun to Jarman and having him take it from her house, did, in fact, conceal the gun.

■ The evidence is also sufficient to establish that appellant's purpose in concealing the handgun was to destroy its availability in the investigation and prosecution of her husband. Deputy Robbins testified that he informed appellant that he was investigating Christopher Ford for vandalism and for possession of a concealable firearm. Her awareness is demonstrated by her statement to the deputy that her husband couldn't have a handgun because of his background. The timing of appellant's action in giving the gun to Jarman shortly after her interview with Deputy Robbins is also suggestive of her awareness of the investigation and of her purpose in giving the handgun to Jarman.

■ Appellant claims that the evidence supports the inference that she gave the gun to Jarman before her conversation with Deputy Robbins and cites *State v. Mayfield*, 879 S.W.2d 561, 565 (Mo.App.1994), for the proposition that, "where two equally valid inferences can be drawn from the same evidence, that evidence does not establish guilt beyond a reasonable doubt." The problem with appellant's contention is that the time line of events for the evening of January 11, 1993 does not support two equally valid inferences. Moreover, as the state points out, the rule in question is applicable only in cases involving circumstantial evidence and in the instant case the state based its case upon

direct evidence of appellant's guilt.[3]

Appellant contends that the evidence shows that Jarman picked up the gun before her conversation with Deputy Robbins in that her interview with the deputy took place at 10:15 p.m., and the transfer of the gun took place at 10:00 p.m. She bases her position upon alleged testimony from Jarman that the transfer took place at 10:00 p.m. or 10:30 p.m. Appellant misstates the testimony. Jarman testified that on the night of January 11, 1993, at about 10:00 p.m. or 10:30 p.m., he and Probasco, went to get some food at the Steer Inn. They ordered a sandwich, picked it up and went over to appellant's house. In addition, Jarman testified that he and Probasco were at the house "maybe half an hour" on their first visit. This, if we were following appellant's time line, would place them at the residence at the time of Deputy Robbins' visit. There is nothing in the transcript to suggest that this occurred. To the contrary, the evidence shows that the visits to the house made by Jarman and by Deputy Robbins did not overlap.

■ Appellant also claims that there was no evidence that the concealment of the handgun did indeed impair or obstruct the prosecution of Christopher Ford. Christopher Ford was convicted for illegal possession of a concealable firearm. We note that the statute under which the appellant was prosecuted, section 575.100, does not require that the concealment *permanently* impair the investigation. Section 575.100 makes it a crime to conceal any thing with purpose to

impair its availability in any official proceeding or investigation. As is noted above, this was amply proven by the evidence at trial. Appellant's guilt does not rest on the success or failure of her efforts to conceal the weapon permanently, but the fact that she did conceal it. Additionally, appellant's claim that it was not proven that she impaired or obstructed the prosecution of a felony is without merit. Her own evidence refutes this claim. Point I is denied.

### Jury Instructions

■ In Point II, appellant claims that the trial court committed plain error in submitting Instruction No. 5, the verdict director, in that the instruction failed to describe the felony that she was accused of: concealing evidence in an attempt to impair its availability in an official investigation. The instruction used the word "weapon" and not the word "firearm" to describe the offense under investigation. Instruction No. 5 reads, in pertinent part:

If you find and believe from the evidence beyond a reasonable doubt;

First, that on or about January 11, 1993, in the County of Putnam, State of Missouri, the defendant concealed a Stallard 9 MM handgun, and

Second, that she did so with the purpose to destroy its availability in a criminal investigation of Christopher Robert Ford, and

**3.** The State suggests that the rule may not be viable. *State v. Black*, 611 S.W.2d 236, 240 (Mo.App.1980), marks the first appearance of the language of the rule quoted by appellant. "Where two equally valid inferences can be drawn from the same evidence, the evidence does not establish guilt beyond a reasonable doubt." *Id.* As the state correctly points out, the rule is merely a restatement of the "circumstantial evidence rule" abrogated by the Missouri Supreme Court in *State v. Grim*, 854 S.W.2d 403 (Mo. banc), *cert. denied*, — U.S. —, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993). In *Grim*, the court points out that the circumstantial evidence rule evolved out of a basic distrust of criminal convictions based upon circumstantial evidence. *Id.* at 405. Noting that the courts in recent years have come to view circumstantial evidence in the same manner as direct evidence, the court discarded the rule, stating:

No reason remains to perpetuate this different rule. Any societal distrust of circumstantial evidence has long been abandoned. We no longer need to hold circumstantial evidence cases to a higher standard than direct evidence cases. If a jury is convinced beyond a reasonable doubt, so long as the evidence meets the minimal appellate standard required by due process, we need not disturb the result simply because the cases depended wholly, mostly, or partially upon circumstantial proof.

*Id.* at 406.

The instant case is not an appropriate vehicle for determining whether or not the "equally valid inference" language of the rule quoted by appellant is still viable and whether recent cases citing this language are, in fact, in error. The state does present a cogent argument, however.

Third, that the concealment of the Stallard 9 MM handgun impaired or obstructed the prosecution of Christopher Robert Ford for the crime for unlawful possession of a concealable weapon,

then you will find the defendant guilty of tampering with physical evidence....

 Initially, we note that review is for plain error because no specific objection to the instruction was made at the time of trial and no objection at all appears in the motion for new trial. Specific objections to a given instruction are required in a motion for new trial unless made at the time of trial in order to preserve the error for review. Rule 28.03; Rule 29.11(d). Failure to comply with the rules results in a waiver of the issue on appeal. *State v. Reichert,* 854 S.W.2d 584, 601 (Mo.App.1993). However, an examination of appellant's contention, performed under the plain error standard of review, establishes that she is not entitled to relief on this point.

The Missouri Supreme Court in *State v. Nolan,* 872 S.W.2d 99, 103 (Mo. banc 1994), imparts the standard for such plain error review in the context of instructional error, stating:

"For instructional error to rise to the level of plain error, the trial court must have so misdirected or failed to instruct the jury as to cause manifest injustice of miscarriage of justice." *State v. Cline,* 808 S.W.2d 822, 824 (Mo. banc 1991). "Manifest injustice or miscarriage of justice" is not an easy phrase to define. "Indeed the cases give the distinct impression that 'plain error' is a concept appellate courts find impossible to find, save they know it when they see it." 3A CHARLES A. WRIGHT, FEDERAL PRACTICE AND PROCEDURE, § 856 (1982).... In the context of instructional error, plain error results when the trial court has so misdirected or failed to instruct the jury that it is apparent to the appellate court that the instructional error affected the jury's verdict.

This court does not find that the instructional error complained of by appellant affected the jury's verdict. The weapon itself, a Stallard 9 MM handgun, was mentioned, not once, but twice in Instruction No. 5. The sentence in Instruction No. 5 which reads, "Third, that the concealment of the Stallard 9 MM handgun impaired or obstructed the prosecution of Christopher Robert Ford for the crime for unlawful possession of a concealable weapon...." is unmistakably referring to the same object as a "concealable weapon" and a "Stallard 9 MM handgun." Point II is denied.

Judgment affirmed.

All Concur.