**STATE of Missouri, Respondent,**

v.

**Jeffrey DUNCAN, Appellant.**

**No. 21501.**

Missouri Court of Appeals, Southern District, Division One.

Dec. 31, 1997.

Douglas R. Hoff, Asst. Public Defender, St. Louis, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for Respondent.

GARRISON, Presiding Judge.

Jeffrey Duncan ("Defendant") was convicted by a jury of burglary in the second degree, § 569.170,[1] and felony stealing, § 570.030, and was sentenced as a prior offender. On this appeal, he contends that the trial court erred in restricting his voir dire examination, and in overruling his motion for judgment of acquittal at the close of all of the evidence. We affirm.

On May 7, 1996, Charlie Million ("Million"), drove by the mobile home of his niece, Angela Moore ("Moore"), and noticed a car parked in the drive. Knowing that Moore should be at work, and no one should be in the home, Million stopped and began to back up. As he did, the driver of the car backed out of the drive after looking back and forth at Million and the trailer. As the car backed from the drive, another man came out of the trailer, apparently carrying items of personal property, and ran into a wooded area behind it.

Million blocked the road with his truck when the car drove in the direction of a dead end road after leaving Moore's drive. He also told a neighbor to call the sheriff's office. When the car returned from the dead end, it avoided Million's truck by going through a ditch and left the scene. Million gave chase and eventually met a sheriff's car, which was responding to the call. When Million moved to the center of the road and blinked his lights, the sheriff's car turned around and

---

1. All statutory references are to RSMo 1994.

joined the chase. The car which had left Moore's drive then stopped, and Defendant was identified as its driver. Defendant told the officer that he had taken another man to the trailer, at the man's request, so that he could obtain some clothes.

■ In his first point relied on, Defendant contends that the trial court erred in restricting his attorney's voir dire examination of the venire panel. He complains that, during voir dire, the trial court sustained objections to questions by his attorney about how many of the venirepersons were "leaders," and whether any were shy in a new group of people.

Defendant cites cases such as *State v. Brown*, 547 S.W.2d 797, 799 (Mo.banc 1977), for the proposition that a liberal attitude should be allowed in conducting the voir dire examination of potential jurors. Among the purposes of that liberal approach is to permit a party to develop not only facts which might form the basis for a challenge for cause, but also facts that might be useful in intelligently making peremptory strikes. *State v. Granberry*, 484 S.W.2d 295, 299 (Mo.banc 1972).

■ "Although wide latitude should be permitted in exploring possible grounds for challenges for cause or peremptory strikes, the nature and extent of the questions counsel may ask are discretionary with the court." *State v. Kreutzer*, 928 S.W.2d 854, 861 (Mo.banc 1996), *cert. denied*, —— U.S.——, 117 S.Ct. 752, 136 L.Ed.2d 689 (1997) (citing *State v. McMillin*, 783 S.W.2d 82, 94 (Mo.banc 1990), *cert. denied*, 498 U.S. 881, 111 S.Ct. 225, 112 L.Ed.2d 179 (1990)). A trial court's rulings on voir dire will be disturbed on appeal only when a manifest abuse is disclosed. *State v. Martin*, 815 S.W.2d 127, 129 (Mo.App. S.D.1991). "The party asserting abuse has the burden of demonstrating a real probability that he was thereby prejudiced." *Kreutzer*, 928 S.W.2d at 861 (quoting *State v. Gray*, 887 S.W.2d 369, 382 (Mo.banc 1994), *cert. denied*, 514 U.S. 1042, 115 S.Ct. 1414, 131 L.Ed.2d 299 (1995)).

In the instant case, Defendant's counsel first asked the panel how many of them would say they were "leaders." Apparently, there were no responses because he asked, "Anyone?" He then said, "It's a hard thing to meet in this type of jury—" when the trial court sustained an objection based on relevance. We do not interpret this record as indicating that the defense was prevented from inquiring about who considered himself a "leader."

■ Defense counsel then asked if "there is anybody who is shy when they get into a new group of people," but the trial court sustained an objection based on relevance. It is not an abuse of discretion to restrict voir dire examination concerning matters that are only marginally relevant to the case. *Martin*, 815 S.W.2d at 129–30. Likewise, the trial court is entitled to restrict open-ended questions during voir dire. *State v. Bannister*, 680 S.W.2d 141, 145 (Mo.banc 1984), *cert. denied*, 471 U.S. 1009, 105 S.Ct. 1879, 85 L.Ed.2d 170 (1985).

Defendant has demonstrated no abuse of discretion with regard to the voir dire questions referred to in this point. Additionally, he has not demonstrated how he was prejudiced as a result of the trial court's rulings. This point is, therefore, without merit and is denied.

■ Defendant's other point asserts that the trial court erred in overruling his motion for a judgment of acquittal at the close of all of the evidence. In support, he contends that the State failed to prove beyond a reasonable doubt that he was involved in the burglary of Moore's trailer or in the removal of items from the residence.

The case was not submitted to the jury on the theory that Defendant personally burglarized and stole from Moore's residence. Rather, it was submitted on the theory that he promoted or furthered the commission of burglary and stealing by acting together with or aiding the unknown person in committing the offenses. Defendant argues there was no evidence that he did anything except sit in a car in Moore's drive and leave when Million drove by. He continues:

[e]ven if one can suppose that there was some connection between [Defendant] and the unknown man who was spotted carrying [Moore's] belongings out of the trailer, there was no evidence that [Defendant]

knew that the man did not belong there or was intending to steal [Moore's] things. It is equally likely that [Defendant] did not know what was going on until the man came out of the house with his arms loaded with things from the trailer, then left because he did not want to be involved.

Accordingly, Defendant argues that there are two equally valid interpretations of the facts under the evidence, one which indicates guilt, and one which indicates innocence. Under these circumstances, he argues that the State failed to meet its burden of proving him guilty beyond a reasonable doubt. In support, he cites *State v. Alul*, 948 S.W.2d 215, 217 (Mo.App. E.D.1997), and *State v. Dooley*, 919 S.W.2d 539, 541 (Mo.App. E.D.1995).

In *State v. Grim*, 854 S.W.2d 403, 405 (Mo.banc 1993), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993), our Supreme Court reaffirmed the standard for appellate review of the sufficiency of the evidence established in *State v. Dulany:*

On review, the Court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. [Citation omitted.] In reviewing a challenge to the sufficiency of the evidence, appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt.

781 S.W.2d 52, 55 (Mo.banc 1989). A dissent in *Grim* argued that under the facts of that case, there were two plausible explanations for the circumstances shown in the evidence, one indicating guilt and the other indicating innocence. 854 S.W.2d at 423 (Robertson, C.J, dissenting). As such, the dissent argued that when the evidence is no more consistent with guilt than it is with innocence, reasonable doubt exists as a matter of law, precluding the case from going to the jury. *Id.* at

424. The *Grim* majority addressed this argument, saying:

We believe there are two fallacies in the dissent's rationale. First, these two inferences are not equally valid, the latter being so unique and unusual as to be implausible; and, second, we think that the dissent has ignored the requirement that "the Court accept[ ] as true all the evidence favorable to the state, including all favorable inferences drawn from the evidence ..." *Dulany*, 781 S.W.2d at 55.

If an appellate court sets itself up to select between two or more acceptable inferences, it ceases to function as a court and functions rather as a juror, actually a "super juror" with veto powers. It is not the function of the court to decide the disputed facts; it is rather the court's function to assure that the jury, in finding the facts, does not do so based on sheer speculation.

*Id.* at 413–414.

*Dooley*, cited by Defendant, does not acknowledge or discuss the criticism in *Grim* of the standard of review now espoused by him. In *Alul*, also cited by Defendant, the Eastern District of this Court characterized as dicta the portion of the majority opinion in *Grim* that criticized the dissent's reliance on the "equally valid inference rule." *Alul*, 948 S.W.2d at 218. We need not decide, however, whether the "equally valid inference rule" espoused by Defendant is still valid in light of *Grim*.[2]

As in *Grim*, Defendant's argument that the inferences in the instant case point equally to innocence as to guilt, is not well taken. Defendant portrays the evidence as indicating that it was just as likely that he did not "know what was going on until the man came out of the house with his arms loaded with things from the trailer, then left because he did not want to be involved." This argument, however, ignores the uncontradicted testimony of Million that when he started to

---

2. In *State v. Ford*, 906 S.W.2d 761, 765, n. 3 (Mo.App. W.D.1995), the Western District acknowledged that the "equally valid inference rule" is merely a restatement of the "circumstantial evidence rule," which was abrogated in *State v. Grim*, 854 S.W.2d at 406. The *Ford* court, however, concluded that the "equally valid infer-

ence rule" would not be applicable in any event because two "equally valid inferences" did not exist, and it expressly did not decide whether the rule is still viable. 906 S.W.2d at 764–65. It acknowledged that the state's argument against its continued viability was a "cogent" one. *Id.* at 765, n. 3.

back his truck toward Moore's drive, Defendant looked at the trailer, turned around and looked at Million, looked back at the trailer, looked back at Million, and then started to back the car from the drive. According to Million's testimony, "At the time the car backed out of the drive a boy came out of the trailer." There was no other evidence about what occurred when Million went by Moore's trailer that morning.

■ We do not view this evidence as giving rise to inferences that point as equally to innocence as to guilt. Defendant's actions in taking the man to the trailer, looking back and forth at Million and the trailer, and then starting to leave the drive, all before the man came from the trailer door, do not point as equally to innocence as to guilt. Additionally, presence of the accused and flight from a crime scene show a consciousness of guilt contrary to any theory of innocence. *State v. Rodden,* 728 S.W.2d 212, 219 (Mo.banc 1987). Therefore, even if the "equally valid inference rule" were still a viable one after *Grim,* an issue we do not decide, it would not apply here. Under the standard of review expressed in *Dulany,* 781 S.W.2d at 55, the evidence here, when viewed in the light most favorable to the verdict, including all favorable inferences therefrom, was sufficient to persuade a reasonable juror as to Defendant's guilt. Defendant's second point is denied.

The judgment is affirmed.

PREWITT and CROW, JJ., concur.